Oberlin, Appellant, *v.* Friedman, Appellee.

[Cite as Oberlin v. Friedman, 1 Ohio App. 2d 499.]

(No. 5851—Decided January 25, 1965.)

*Messrs. Marshall, Melhorn, Bloch & Belt* and *Mr. Wilbur C. Jacobs,* for appellant.

*Messrs. Shumaker, Loop & Kendrick* and *Mr. Charles W. Peckinpaugh, Jr.,* for appellee.

*Per Curiam.* This is a so-called malpractice action. Plaintiff, appellant herein, suffered paraplegia following a hemorrhoid operation, which he claimed was the result of negligence by defendant, appellee herein, an anesthesiologist, in the administration of a caudal anesthesia. The appeal is here on questions of law from a judgment on the verdict of the jury in favor of defendant.

The assignments of error are as follows:

1. The court erred in giving the four special charges requested by defendant.

2. The court erred in the general charge to the jury.

3. The court erred in admitting in evidence the opinion of a doctor who was not an expert in the field and who answered the ultimate question for the jury.

4. The verdict is against the weight of the evidence.

5. The verdict is not supported by the evidence and is contrary to law.

The expert medical testimony of plaintiff constituted substantial evidence that defendant was negligent in the injection of a neurolytic (alcohol) substance in the spinal cord for an anesthetic which caused the paraplegia. The defendant, by expert medical testimony, produced substantial evidence that the paraplegia was caused by a thrombosis disassociated from and not caused by an injection of a neurolytic substance as an anesthetic.

The assignment of error No. 2 urges that the court, in its general charge to the jury, failed to properly charge on the doctrine of *res ipsa loquitur*. Where the petition and proof, as in this case, disclose that plaintiff had knowledge of the facts and circumstances showing the claimed negligence of defendant and there is direct evidence as to the cause, we determine that the doctrine of *res ipsa loquitur* does not apply. Such assignment of error is, therefore, not well taken. *Cleveland Ry. Co.* v. *Sutherland,* 115 Ohio St. 262, 264; *Winslow* v. *Ohio Bus Line Co.,* 148 Ohio St. 101.

Notwithstanding the question as to the application of the doctrine of *res ipsa loquitur*, the special charge No. 1 requested by defendant, under assignment of error No. 1 taken in consideration with the general charge to the jury in assignment of error No. 2, raises a serious question as to prejudicial error. The court gave special charge No. 1 as requested, to wit:

"Instruction Number One: I instruct you that it is the law that a physician, unless by express agreement, does not warrant that his care and treatment of a patient will be successful or undertake that nothing serious will arise as a result thereof. Rather, his duty is to exercise that degree of care and skill which is ordinarily employed by members of the medi-

cal profession in the same line of practice in his own or a similar community.

"In this case, Dr. Friedman did not warrant that his care and treatment of Mr. Oberlin would be successful, nor did he undertake that nothing serious would arise as a result thereof. Rather, his duty was to exercise that degree of care and skill which is ordinarily employed by members of the medical profession in the same line of practice in his own or a similar community."

In the general charge to the jury the court instructed the jury as follows:

"This is a negligence case. Negligence is the failure of a person owing a duty to another to use the required quantum of care in the discharge thereof. It is undisputed the plaintiff engaged defendant, a local physician, specializing in anesthesia, to administer a caudal anesthetic to him on October 2, 1961, incident to a hemorrhoidectomy thereupon performed by a surgeon. Thus germane becomes the required standard of care for application to whatsoever the weight of the evidence discloses the defendant did or failed to do to determine whether same constituted negligence.

"With respect thereto you are instructed defendant was not an insurer of the results of his work; that he was required to exercise in the discharge of his duty to plaintiff *only* that skill, knowledge, diligence, and care then in 1961 possessed and exercised by the average physician specializing in that branch of medicine in this or similar localities. Failure if any so to do would constitute negligence; *otherwise not*; the burden of proof of which rests on the plaintiff, and must be sustained by a preponderance of the evidence." (Emphasis added.)

The law applicable for instructions which should govern the jury in its deliberations in this case is stated in paragraphs two, three, four and five of the syllabus in *Ault* v. *Hall*, 119 Ohio St. 422, 60 A. L. R. 128:

"2. In an action for negligence, conformity to custom or usage is a matter proper to be submitted to the jury for its consideration in determining whether or not ordinary care has been exercised.

"3. Customary methods or conduct do not furnish a test which is conclusive or controlling on the question of negligence

or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised.

"4. Methods employed in any trade, business or profession, however long continued, cannot avail to establish as safe in law that which is dangerous in fact.

"5. Where a surgeon in the course of an abdominal operation uses sponges and fails to remove one of them from the cavity before closing the incision, it is error for the trial court to instruct the jury that if the custom of counting by nurses was reasonable and defendant followed and relied upon it, the verdict should be in his favor."

Paragraphs three and four of the syllabus in *Ault* v. *Hall, supra,* are quoted with approval in the opinion in *Morris* v. *Cleveland Hockey Club, Inc.,* 157 Ohio St. 225, 231, and also in *Witherspoon* v. *Haft,* 157 Ohio St. 474, 481.

The plaintiff's expert, Dr. Greene, testified in part as follows:

"Q. The question now is, assuming those facts to be true and based on reasonable medical certainty, do you have an opinion first as to the diagnosis in this case?

"* * *

"A. Yes, I have an opinion.

"Q. First, you have the opinion, and then what is the opinion? A. My opinion is that the patient is now showing the effects of destruction of the nerve roots on both sides from sacral 5, 4, 3, 2, and 1, and lumbar 5, 4, 3, 2, and 1, and partial of thoracic 12, 11, and 10, with effects both sensory and motor in these nerve roots.

"Q. Now sir, in accordance with that diagnosis, do you have an opinion, and in accordance with these hypothetical facts, as to the direct and proximate cause of that condition?

"* * *

"A. Yes.

"Q. And what is your opinion? A. A neurolytic substance was injected into his spinal canal."

There is undisputed evidence in the record that alcohol and the anesthetic called Xylocaine were the same in appearance and are indistinguishable unless the alcohol is colored, which

can easily be done; also, that the defendant used uncolored alcohol on this occasion and used the two substances upon the same tray. It also appears from the evidence that the Xylocaine was not in a single container but that it was necessary to use the substance from two different containers after it had been placed in a cup or glass on the tray with the alcohol.

The testimony of the defendant emphasized that all things done in preparing the plaintiff for the surgical operation were in accord with usual practices and custom. It seems clear, therefore, that even though the jury may have believed that the handling of the uncolored alcohol and Xylocaine on the same tray was negligence and that those substances should have been handled in a different manner, the jury was precluded from finding negligence by the instructions of the court. The jury could not find that the injection of alcohol, as testified by plaintiff's expert, was negligence under the instructions of the court because the evidence was that the defendant had followed the usual practice and custom in the handling of the two substances on the same tray.

The special instruction went to the jury in its deliberation, and whenever they would consider acts which might otherwise be negligence on the part of the defendant, they were confronted with the erroneous law that the defendant followed custom and practice and, therefore, could not be negligent.

It is apparent from the language of the special instruction and the general charge at the close of the evidence as quoted above that the court bound the jury to determine the liability of the defendant by the gauge of whether the defendant had followed the custom and practice usually followed by the members of defendant's profession. The giving of these instructions, without qualification, as a standard or gauge by which the jury was to determine the liability of defendant, contrary to the applicable law as established by the Supreme Court, was prejudicially erroneous, and, therefore, assignments of error 1 and 2 considered together are well taken. Assignments of error 3, 4 and 5 are either not well taken or nonprejudicial.

The judgment of the Common Pleas Court is, therefore, reversed, and the cause is remanded to that court for a new trial.

*Judgment reversed.*

DEEDS, FESS and SMITH, JJ., concur.