MASER ET AL., APPELLEES, *v.*
CITY OF CANTON ET AL., APPELLANTS.

(No. CA-4915—Decided October 25, 1978.)

*Messrs. Buckingham, Doolittle & Burroughs, Mr. Gary A. Banas* and *Mr. Hans U. Stucki,* for appellees.

*Mr. Harry E. Klide,* city solicitor, *Mr. William J. Hamann,* and *Mr. Michael J. Freeman,* for appellants.

PUTMAN, J.  The City Council of Canton enacted an ordinance December 21, 1976, in which it "appointed, directed and authorized" its police and fire committee "to investigate the causes of recent resignations and transfers of officers within the police and fire departments and to inquire into the morale and efficient operation of the police and fire departments."

The ordinance delegated to the committee the power of the Council to compel the attendance of witnesses by subpeona, to employ shorthand reporters "to insure that an accurate verbatim transcript of all statements and testimony taken is preserved" and mandated the committee to "make due report of its findings and conclusions" to the whole council.

The ordinance provided that "all hearings and sessions for the purpose of taking testimony, shall be held in private and shall not be open to public observation except to the extent that such meetings or sessions may be required to be open to the public under applicable state and local open meeting laws."

This appeal is taken by members of Council from a Court of Common Pleas judgment permanently enjoining them "from proceeding with these hearings on a closed door basis." The court stated: "The aforesaid hearings may proceed on an open and public basis."[1]

It is undisputed that there are fourteen Council members and only three of them comprise its police and fire committee.

The plaintiffs in the Common Pleas Court (appellees here) happen to be the chief of the fire and police departments respectively, but, in our view, the question of who brings the action is irrelevant to any question of law in this appeal. We would reach the same result if the action had been brought by any person with standing.

In his remarks from the bench, after the evidence was con-

---

[1] The ruling penalizes injunction violators by a forfeiture of their public offices.

cluded and the cause submitted for a final judgment, the trial court said, among other things:

"Based on the evidence, the pleadings and even the evidence of the city itself, the court does find that the so-called Sunshine Law Section 121 point 22-G-1, does apply in this matter. The plaintiffs have requested a public hearing to consider these things and they're entitled to have those hearings conducted in the public. I appreciate that another branch of this court has already ruled on it, as Mr. Hamann pointed out I am not bound by that ruling. However, I am persuaded by it and affirm it."

R. C. 121.22 was re-enacted entirely after the decision of the Ohio Supreme Court in *Beacon Journal Publishing Co.* v. *City of Akron* (1965), 3 Ohio St. 2d. 191, interpreted former R. C. 121.22 *(infra)*.

In that case, the Supreme Court dealt with the then text of that former statute which did not include the word "committee." The Supreme Court declared, at pages 198 and 199, as follows:

"An examination of both the statute and the ordinance reveals that the second sentence in both the ordinance and the statute limits the first sentence in each; otherwise there would be no reason for the second sentence in each. Therefore, it must be concluded that both the council and the General Assembly clearly intended that those meetings which are required to be open to the public are *all meetings of any board or commissions, where any resolution, rule, regulation or formal action of any kind shall be adopted or passed.*"

The statutory sentences there referred to provided, in part, as follows:

"121.22 Meetings of governmental bodies to be public; exception.

"All meetings of any board or commission of any state agency or authority and all meetings of any board, commission, agency, or authority of any county, township, municipal corporation, school district, or other political subdivision are declared to be public meetings open to the public at all times. No resolution, rule, regulation, or formal action of any kind shall be adopted at any executive session of any such board, commission, agency, or authority."

We consider it significant that that statute did not use the word "committee."

A well settled rule of statutory construction, as well as the simple recognition of a matter of common knowledge, leads us to conclude that popular dissatisfaction with the then existing statute as interpreted by the Supreme Court of Ohio impelled the legislature, prodded by a vigilant news media, to the enactment of a new and enlarged "Sunshine Law."[2]

Of first significance, in our opinion, is the addition of the word "committee" to the definition of "public body" in the present R. C. 121.22.[3] Obviously, a "committee" of Council cannot do any of the things listed by the Ohio Supreme Court in its ruling limiting the scope of the old statute. See *Beacon Journal, supra.*

Secondly, the new statute mandates a "liberal construction" to achieve performance in "sunshine" by public "officials" (note here the word "bodies" is not used) when they "take official action *and* * * *conduct all deliberations upon official business* * *."

It seems plain enough to any fair minded person that the people of Ohio were, through their elected representatives, "sending a message" to their judges that they were changing the law of the *Beacon Journal* case.

We think they made it clear as a bell they were enthusiastically unhappy with that rule (at least respecting municipalities and committees of their councils) limiting public access solely to "meetings where any resolution, rule, regulation or formal action of any kind shall be adopted or passed."

We hear the people loud and clear say they want to open up to their scrutiny much more than that. They want to be in on "all deliberations upon official business * * * unless the

---

[2] "Deliberations" and "decisions" were accomplished by "committees" behind closed doors while reporters "cooled their heels" outside and only the unexplained formal roll call vote was conducted in public. Under the rules of Canton City Council an ordinance cannot be introduced by a single member. A prior "decision" of a "committee" is a prerequisite.

[3] "(B) As used in this section: (1) 'Public body' means any board, commission, committee, or similar decision-making body of a state agency, institution, or authority, and any legislative authority or board, commission, committee, agency, authority, or similar decision-making body of any county, township, municipal corporation, school district, or other political subdivision or local public institution."

subject matter is specifically excepted by law" where that takes place at a "prearranged meeting" of a majority of members of the "public body."

We respect the mandate of the people liberally to construe the law binding their servants in favor of the right of the people to know of and attend these meetings.

It is claimed by appellants that "committee" somehow cannot mean municipal council committees composed of fewer than a majority of the whole council. When pressed to identify any other statutory committee to which this legislative word could be said to refer, none was called to our attention and we have found none. The concept of the whole council is separately stated in the definition of public body by the phrase "legislative authority."

It is our duty to give some meaning to each word of the statute. No other possible statutory meaning has been offered for the word "committee."

It was claimed in oral argument that the legislature could not be presumed to have intended to prohibit one member of a standing committee from picking up his telephone and calling another committee member to discuss public business. With this we heartily agree. So does the legislature. R. C. 121.22(B)(2) defines meeting as a "prearranged discussion."

It is claimed by appellants that we cannot affirm the injunction in this case without ruling that all standing committees of council must post statutory prior notices of their routine meetings and hold them in public. With this we do not agree. We do not have such a case before us and we make no expression either way on that or any other case not before us.

We have only this case to decide and we decide nothing else. Other cases will have to await a decision on a case by case basis. This is not an action for a comprehensive declaratory judgment but is an appeal from an injunction prohibiting secret proceedings where testimony is taken and witnesses are compelled to appear under a power which exists only in the legislative authority as a whole and which could not lawfully be exercised by any committee thereof absent an ordinance delegating that authority to a group of its membership to act as its agent, deputy or alter ego (other self) and respecting which that delegated body is mandated to make findings as

well as conclusions and to make a report of them to the entire council.

We hold that the mandate to make decisions as to what to find, what to conclude and what to report to the whole council clearly makes this particular police and fire committee, to the limited extent that it proceeds under a claim of authority of the particular ordinance before us, a "decision making body" of a municipal corporation and thus bound by the provisions of R. C. 121.22.

Whether the word committee in that statute *per se* brings all council committees including standing committees under the "rays of sunshine" is not before us to decide. That is to say, whether the word committee stands independently and the words "or other similar decision making body" function to add other concepts in addition to the concept of committee is not, in our view, pivotal to the analysis.[4]

We reject the claim that the "plain meaning" rule helps these appellants. In our view, the plain meaning of the word "committee," as added to the old statute, is broad enough to ensnare them. They are a committee and that is plain enough to us. The phrase "legislative authority" (meaning the whole council) is separately stated in the definition of "public body."

In our view, to escape "sunshine" this committee, acting under this ordinance, needs an "interpretation" to get out from under the "plain meaning" of the statutory words. There we encounter the "liberal construction" clause added *after* the decision in the *Beacon Journal* case.

Finally, it is claimed by appellants that, assuming *arguendo* they are within the scope of threshold applicability of the statute (which they vigorously dispute), their proceedings under the ordinance in question are exempt under the express exception of paragraph (G)(1) of R. C. 121.22, because they would be "meeting to consider the employment of personnel." This claim fails for two separate reasons.[5]

---

[4] Under the rule of *noscitur a sociis* (it is known from its associates) general and specific words, capable of an analogous meaning, when associated together, take color from each other, so that general words are restricted to a sense analogous to the less general. Under this view, the language would be considered to mean "other decision making bodies similar to committees of the legislative authority of a municipal corporation."

[5] Present R. C. 121.22(G)(1) states as follows:

Unless that exception is limited to personnel solely and directly hired and controlled by council (such as their own clerk) it would provide an exception to the law as broad as the law itself, for what subject cannot be considered somehow to affect all municipal employees or personnel.

Secondly, the Court of Common Pleas stated in its announcement of decision from the bench[6] that he based his decision on paragraph (G)(1), opining that the plaintiffs (the police and fire chief) as "personnel" had "requested a public hearing" as is their right to do under paragraph (G)(1).

We do not reach the question whether the trial court correctly ruled on that point of law because of the reasons already given herein.

For the foregoing reasons, all assigned errors are overruled and the judgment of the Court of Common Pleas of Stark County is affirmed.

*Judgment affirmed.*

RUTHERFORD, P. J., and DOWD, J., concur.

---

" The members of a public body may hold an executive session only at a regular or special meeting for the sole purpose of the consideration of any of the following matters: (1) Unless the public employee, official, licensee, or regulated individual requests a public hearing, to consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual. Except as otherwise provided by law, no public body shall hold an executive session for the discipline of an elected official for conduct related to the performance of his official duties or for his removal from office."

[6] There are no Civ. R. 52 written findings of fact stated separately from conclusions of law. None were requested by either party and the trial court did not volunteer them. Counsel in this court agreed there are no disputed facts.