CITY COMMISSION OF PIQUA, APPELLEE, *v.*
THE PIQUA DAILY CALL, APPELLANT.

(No. 78 CA-35—Decided March 14, 1979.)

*Gaier, Pratt & Freed Co., L.P.A., Mr. J. Richard Gaier, Messrs. Faust, Harrelson, Fulker & McCarthy* and *Mr. John E. Fulker,* for appellee.

*Messrs. McCulloch, Felger, Fite & Gutmann, Mr. Paul P. Gutmann* and *Mr. William B. McNeil,* for appellant.

McBRIDE, P. J. This case was initiated by plaintiff-appellee, the City Commission of the City of Piqua (hereinafter "City Commission"), against defendant-appellant, the Piqua Daily Call, for a declaratory judgment to resolve a controversy regarding application of the city charter and R. C. 121.22, as amended in 1975, known as the "Sunshine Law," to an executive meeting of the City Commission. Piqua Daily Call responded and filed a counterclaim demanding an injunction and rescission of all municipal resolutions and ordinances

that resulted from executive meetings held in violation of either R. C. 121.22 or the city charter.

There followed many filings involving additional parties, additional meetings, discovery, affidavits and depositions, culminating in a conclusion on September 11, 1978, in which the trial court granted summary judgment, finding that the limitations in R. C. 121.22 did not apply to the City Commission and that the city charter was not violated.

Piqua Daily Call lists multiple assignments of error, some of which are repetitive; however, these are conveniently argued by Piqua Daily Call under three propositions of law. This court will adopt the same economy and discuss the three propositions as presented in the brief.

I.

The first proposition is that R. C. 121.22 is a valid exercise of police power by the General Assembly addressing a matter of general statewide concern, making it applicable, by construction, to the legislative body of charter cities, namely, the City Commission and its members.

Piqua Daily Call concedes that charter cities have authority to exercise *all* powers of local self-government under the Constitution of Ohio and that the limitation, as to general police, sanitary and other similar regulations, does not modify or limit the sovereign powers of local self-government. *State, ex rel. Canada,* v. *Phillips* (1958), 168 Ohio St. 191.

Piqua Daily Call also concedes that the case of *Beacon Journal Publishing Co.* v. *Akron* (1965), 3 Ohio St. 2d 191, is consistent with a determination that R. C. 121.22 is not a police regulation. This arises because the court found it necessary to look to the charter, with regard to each board considered, to determine whether each board was subject to a state statute, an ordinance, or to the charter. For example, the civil service commission was created and authorized to act under the charter and, accordingly, it was not subject to R. C. 121.22 and could adopt its own rules for the conduct of its meetings. *Id.,* at page 198. The same rationale with considerably greater force applies to the City Commission as the legislative assembly of a sovereign municipality.

The *Beacon Journal* case distinguishes the application of

R. C. 121.22, by the nature of the creation of a board or commission and by whether state law has been incorporated in its operation. There is no state law or decision that limits the power of a charter city to provide for the conduct of its own government by a commission, under its supreme legislative authority delegated by the Ohio Constitution and its charter. This power was amply discussed in *Dayton Newspapers, Inc.*, v. *Dayton* (1970), 23 Ohio Misc. 49, affirmed in 28 Ohio App. 2d 95 (1971), and requires no restatement here.

There has been no change in the foregoing law, nor any circumstance justifying a reversal. The reference to municipal corporations in R. C. 121.22(B)(1) does not alter the situation. All municipal corporations are not necessarily under city charter. A state statute cannot alter the situation with respect to the exercise of the power of local self-government under the home rule amendment.

Piqua Daily Call concedes that the success of this appeal rests upon a reversal of the *Beacon Journal* and *Dayton Newspapers* cases. Since the factual differences do not amount to a distinction, the argument is advanced that the *Beacon Journal* case did not involve the city commission, itself, and that the *Dayton Newspapers* case did not discuss R. C. 121.22 as a general regulation under the police powers of the state, expressly required to be consistent in the home rule amendment. These two arguments deserve a response.

The *Beacon Journal* case involved an assortment of individual municipal boards, agencies and commissions created or required by both state and local laws. It did not involve either sovereign legislative authority, the general assembly or the city commission. In resolving the problem before it the Supreme Court made significant distinctions between municipal agencies, their origin, authority and purpose. In doing so, it recognized as different, agencies created and regulated solely by the city charter, thereby recognizing not only the sovereignty of the city charter in local government but also, by implication, the supreme power of the legislative agency of the city—the city commission itself. There is no doubt that many municipal agencies are governed in their activities by state law, the police department being but one example. However, as to this example, it is established that the man-

agement and control of the police department is an appropriate function of local government under a charter.

It is of the essence of home rule and of self-government that the sovereign body that has that power, whether described as a commission, council, assembly or otherwise, has the inherent power to carry on its duties according to its own rules. Were it otherwise, home rule and self-government would become a fiction, and the purpose of the constitutional amendment would be denied.

The nature of the sovereignty of a municipality and its supreme legislative assembly, however described in the charter, within its constitutional power of local government, remain today one of the least understood and appreciated fundamental rights of the local citizenry. To one who has had an interest in the subject for many years, this is surprising in view of the intense public interest in other fundamental documents, such as federal and state constitutions. City charters deserve equal interest and attention because in Ohio, within the area of local self-government, they are equally the supreme law.

Defining the area of jurisdiction of local self-government within the state has led to considerable litigation, notably because of the provision that local police, sanitary and other similar regulations may not conflict with general state laws. In the instant case, Piqua Daily Call argues that the "Sunshine Law" is a general law under the police power of the state, granting to the press and similar media rights *"beyond those guaranteed by the constitution."* That it does so, is not denied; however, the legislation does not amend either the Ohio Constitution or the city charter. The statute does not and cannot amend the home rule provision of the Constitution which alone resolves the question of the power of local self-government under a city charter. Legislation that attempts to restrict the sovereign power of local self-government or the rules by which a local legislative assembly manages local affairs has no application to charter cities. The right to tell a charter city commission or assembly when, how, where and under what circumstances it may meet, adjourn or hold an executive meeting no longer exists in the General Assembly. This segment of sovereignty has been assigned, by the Constitution, to charter cities, and it is one in which the state, as a whole, no longer has any residual interest.

Piqua Daily Call also relies upon more recent cases involving the long standing controversy over the balancing of rights between a fair trial and a free press. These concepts relate to the judicial division of government and not to the home rule provision for local government. The conduct and records of the judiciary are a state, not a local question. See *State, ex rel. Dayton Newspapers,* v. *Phillips* (1976), 46 Ohio St. 2d 457; *Dayton Newspapers* v. *Dayton* (1976), 45 Ohio St. 2d 107.

We overrule the first proposition of law.

## II.

The second proposition is that Section 4 of the Piqua charter prohibits the City Commission from conducting meetings in executive session and not open to the public.

Section 4 provides, in part, as follows:

"All meetings of the commission and of committees thereof shall be open to the public, and the rules of the commission shall provide that citizens of the city shall have a reasonable opportunity to be heard at any such meeting in regard to any matter considered thereat."

This provision is substantially the same as the provision in the *Dayton Newspapers* case, *supra* (23 Ohio Misc. 49, 56), affirmed by this court in 28 Ohio App. 2d 95.

As originally enacted R. C. 121.22 generally approved executive sessions. However, the 1975 amendment narrowly limited executive sessions. R. C. 121.22(G) and (H). The compatibility of the original statute with the practice under the Dayton charter was not significant and was not determinative. As we have again held, under the first proposition of law, the state statute is not material on the question and cannot impose a limitation upon the constitutional grant of power to a municipality under a city charter.

There is no prohibition in the charter against the established parliamentary practice of executive sessions. Such a prohibition may not be created by implication unless the basis, therefore, is found within the four corners of the charter instrument.

The second proposition of law is overruled.

## III.

The third proposition is based upon the argument that R. C. 121.22 expands the power of the City Commission to permit executive meetings and that the City Commission may hold such meetings only in strict accordance with the limitations imposed by the statute.

This argument is based upon the false proposition that the City Commission has no authority to hold executive meetings under the charter. In the absence of a prohibition in the charter, the City Commission has the same inherent power under established parliamentary practice to hold executive meetings as any other sovereign assembly. As pointed out in the *Dayton Newspapers* case, *supra* (23 Ohio Misc. 49), at that time, such meetings could be held (1) as an established and necessary practice of a deliberative body and (2) in addition, under the then existing statute, if applicable. Because of the dual reason for permitting such meetings, some of the language of that opinion was made inapplicable by the 1975 amendment, but this does not change the principle that the statute does not add to or subtract from the power of the City Commission under the charter in matters of self-government, as heretofore determined in the first proposition of law.

The argument that a statute may expand or limit the constitutional power of a charter city in the area of local self-government is false. The Constitution prevails.

We find that R. C. 121.22 does not expand or limit the power of the City Commission under its charter. This is consistent with our conclusion on the first proposition of law that R. C. 121.22 has no application to the sovereign power of local self-government, under the Constitution, to conduct and regulate its own operation. We agree with the opinion of the trial court that R. C. 121.22 does not impose any limitation upon the power of charter cities.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KERNS and PHILLIPS, JJ., concur.