HILLS & DALES, INC., APPELLANT, *v.* CITY OF WOOSTER ET AL., APPELLEES.

(No. 1746—Decided August 4, 1982.)

Mr. *Walter C. Grosjean* and Mr. *Daniel H. Plumly,* for appellant.

Mr. *H. Lloyd Cornelius,* director of law, for appellees.

BELL, P.J. The instant case originated as a declaratory judgment action commenced by appellant, Hills & Dales, Inc. Hills & Dales sought a declaration that the city of Wooster's new zoning code was invalid in that it had been enacted in violation of Ohio's "Sunshine Law," the city charter, and city ordinances.

The factual basis for the complaint is as follows:

On September 20, 1979, after having held six meetings open to the public during the previous month on the issue of the proposed revision of the zoning code, the city planning commission held a private work session to which certain members of city council were invited and from which all other persons were excluded.

On September 26, 1979, the planning commission formally approved the proposed zoning code and forwarded it to council with the commission's recommendation for adoption.

On March 24, 1980, after several public hearings and three readings in open sessions of council, the new zoning ordinance No. 1980-20 was adopted.

The primary contention of Hills & Dales was that the executive work session held by the planning commission violated the standard set by the state's "Sunshine Law" and thus rendered invalid all further actions taken on the zoning code by the commission and council.

Upon plaintiff's motion for summary judgment, the trial court ruled in favor of the city. The issue was certified for appeal pursuant to Civ. R. 54(B).

Hills & Dales appeals, alleging the following assignments of error:

"I. The lower court erred when it determined that a law of general application that falls within the statewide concern doctrine was inapplicable to the City of Wooster by reason of its Charter even though the City Council enacted legislation pursuant to its police power without compliance with the Ohio 'Sunshine' Law.

"II. The lower court committed reversible error when it interpreted the Charter and ordinances of the City of Wooster to enable public officials to conduct deliberations to the exclusion of the public despite specific charter and ordinance language to the contrary.

"III. The failure of the City of Wooster to comply with the precise mandate contained in the Charter regarding public notice publication requires that the lower court's order be reversed."

Ohio's so-called "Sunshine Law," R.C. 121.22, states in part, that:

"(A) This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings * * *.

"* * *

"(H) A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body. A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid * * *."

The first issue presented is whether the city of Wooster, in enacting its zoning code, was required to adhere to the mandates of the "Sunshine Law." For the reasons set forth below, we find that it was not required to do so.

The city of Wooster has adopted a charter form of government pursuant to Section 7 of Article XVIII of the Constitution of Ohio which provides that:

"Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

Section 3 of Article XVIII empowers municipalities to:

"* * * exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

The words "as are not in conflict with general laws" have been universally construed to place a limitation on the power to "adopt and enforce * * * local police, sanitary and other similar regulations," but not on the power of local self-government. See *State, ex rel. Canada*, v. *Phillips* (1958), 168 Ohio St. 191 [5 O.O.2d 481]; *State, ex rel. Petit*, v. *Wagner* (1960), 170 Ohio St. 297 [10 O.O.2d 344]; and *Dies Electric Co.* v. *Akron* (1980), 62 Ohio St. 2d 322 [16 O.O.3d 365].

As stated in *Froelich* v. *Cleveland* (1919), 99 Ohio St. 376, at 391:

"* * * The constitution authorizes the city to exercise part of the sovereign power, and in the proper exercise of that part it is immune from general laws. * * *"

The only other limitations on the powers granted to a charter municipality under Section 3 of Article XVIII are the restrictions imposed by other provisions of the Constitution. *State, ex rel. Gordon*, v. *Rhodes* (1951), 156 Ohio St. 81, 88 [45 O.O. 93].

"By reason of Sections 3 and 7 of Article XVIII of the Ohio Constitution, a charter city has all powers of local self-government except to the extent that those powers are taken from it or limited by other provisions of the Constitution or by statutory limitations on the powers of the municipality which the Constitution has authorized the General Assembly to impose." *Bazell* v. *Cincinnati* (1968), 13 Ohio St. 2d 63 [42 O.O.2d 137], paragraph one of the syllabus, certiorari denied 391 U.S. 601.

Appellant argues vigorously that R.C. 121.22 is a general law of state-wide concern, enacted pursuant to the state's police power, and must, therefore, supersede the police regulations enacted by the municipality. This argument must fail for several reasons.

First, appellant's proposition that the "Sunshine Law" falls within the ambit of the state's general police powers is without judicial support. The "police powers" of the state encompass the areas of public health, safety, morals and general welfare. Courts which have reached the issue have unanimously indicated that R.C. 121.22 is not a police power statute. See *Beacon Journal Publishing Co.* v. *Akron* (1965), 3 Ohio St. 2d 191, at 195 [32 O.O.2d 183]; and *Piqua* v. *Piqua Daily Call* (1979), 64 Ohio App. 2d 222, at 225 [18 O.O.3d 168], motion to certify overruled (1979).

Second, and most importantly, we are of the opinion that the procedure by which the municipality conducts its decision-making process is a matter solely within the purview of the powers of a chartered local self-government. Once this determination has been made, it makes little difference whether the "Sunshine Law" is a "general law" or a law of "statewide concern," for in such a case, the constitutionally granted power of local self-government reigns supreme. See *State, ex rel. Canada*, v. *Phillips, supra; Dies Electric Co.* v. *Akron, supra;* and Justice Locher's dissent in *State, ex rel. Evans*, v. *Moore* (1982), 69 Ohio St. 2d 88, at 95-96 [23 O.O.3d 145].

Although zoning regulations themselves fall within the definition of police powers, this is not a case where the municipality's *zoning ordinance* is alleged to be in conflict with a general law of the state. This is a case which concerns a charter municipality's fundamental power to control the *manner* in which the local government decision-making process is conducted.

As the court stated in *Fitzgerald* v. *Cleveland* (1913), 88 Ohio St. 338, at 344:

"* * * it is sufficient to say here that the powers referred to are clearly such as involve the exercise of the functions of government, and they are local in the sense that they relate to the municipal affairs of the particular municipality. * * *"

We hold, therefore, that a charter municipality, in the exercise of its sovereign powers of local self-government as established by Section 3 of

Article XVIII of the Constitution of Ohio, need not adhere to the strictures of R.C. 121.22. In so holding, we adopt the words of Judge McBride, who stated that:

"* * * [R.C. 121.22] does not and cannot amend the home rule provision of the Constitution which alone resolves the question of the power of local self-government under a city charter. Legislation that attempts to restrict the sovereign power of local self-government or the rules by which a local legislative assembly manages local affairs has no application to charter cities. The right to tell a charter city commission or assembly when, how, where and under what circumstances it may meet, adjourn or hold an executive meeting no longer exists in the General Assembly. This segment of sovereignty has been assigned, by the Constitution, to charter cities, and it is one in which the state, as a whole, no longer has any residual interest." *Piqua* v. *Piqua Daily Call, supra,* at 225.

The opinions in *Maser* v. *Canton* (1978), 62 Ohio App. 2d 174 [16 O.O.3d 373] and *State, ex rel. Evans,* v. *Moore, supra,* relied upon and cited by appellant, are distinguishable in that *Maser* did not reach the constitutional issue, and *Evans* dealt specifically with the exercise of the state's police power. Accordingly, we reject assignment of error one.

Appellant next contends that the Wooster Zoning Code was enacted in violation of the city's charter or ordinances. We must disagree.

We find nothing in the Wooster Charter which mandates that all meetings of the city council and/or the city planning commission must be open to the public. The relevant portions of the charter are set forth below:

"Section 1.04, Manner of Exercise of Powers.

"All such powers shall be exercised in the manner prescribed in this Charter, or if not prescribed herein, in such manner as shall be provided by Ordinance of Council, and when not prescribed in this Charter or provided by ordinance of Council, then such powers shall be exercised in the manner provided by the general laws of the State of Ohio until the Council shall provide a different manner of exercising such powers.

"* * *

"Section 2.08, Council Rules and Journal.

"The Council shall determine its own rules and order of business and shall provide for keeping a journal of its proceedings. This journal shall be a public record."

The charter contains no express provision for "executive" or "work" sessions, but neither does it contain an express prohibition of such private meetings. Absent an express prohibition, we cannot find that the charter was violated. Moreover, the private executive session is a well-known and accepted concept in established parliamentary practice.

Pursuant to Section 2.08 of the charter, Chapter III of the Wooster Codified Ordinances has adopted these established parliamentary procedures. Section 111.30 provides that:

"Section 111.30, Robert's Rules of Order.

"In the absence of any rule on any matter of business, Council shall be governed by Robert's Rules of Order."

Appellant's reliance upon Chapter 107 of the Wooster Codified Ordinances, and Section 2.16 of the charter to show that R.C. 121.22 was expressly adopted by the city is misplaced.

The express adoption of R.C. 121.22(F) in Section 107.01 cannot be interpreted in any manner as an adoption of R.C. 121.22 in its entirety. Nor can the adoption of R.C. 121.22(F) be interpreted to prohibit executive sessions by council or the planning commission.

Section 2.16 of the Wooster Charter, entitled "Public Notice Before Final Enactment," provides, in relevant part, that:

"* * * Those actions of Council which require public hearings under the general laws of Ohio shall require public hearing under this Charter."

The "public hearings" referred to above cannot be equated with "meetings open to the public" as required by R.C. 121.22, and the charter cannot be so interpreted. See *Matheny* v. *Bd. of Edn.* (1980), 62 Ohio St. 2d 362 [16 O.O.3d 411].

In sum, we find nothing in the charter or city ordinances which would preclude the actions taken in the instant case. Accordingly, assignment of error two is overruled.

Finally, appellant claims that the city council failed to comply with the notice requirements of Section 2.16 of the charter. The charter provides:

"No action of Council authorizing the surrender or joint exercise of any of its powers, or in the granting of any franchise, *or in the enactment, amendment or repeal of any zoning* or building *resolution or ordinance,* or in the changing of any ward boundaries, or in the authorizing of any change in the boundaries of the Municipality, *shall be enacted unless the title and summary of the ordinance or resolution has been published in a newspaper of general circulation within the City at least seven days before enactment by Council. * * *"* (Emphasis added.)

The following notice was published in the Wooster Daily Record, a newspaper of general circulation, prior to the enactment of the zoning code:

"NOTICE OF PUBLIC HEARING

"Notice is hereby given that the Council of the City of Wooster will hold a public hearing on November 15, 1979. (THURSDAY) at 7:30 P.M. in the Council Chambers at 538 N. Market St., to consider the proposed New Zoning Code and Map for the City of Wooster, as approved by the Wooster City Planning Commission on September 6, 1979.

"A copy of the proposed New Zoning Code and Map is on file for public examination in the office of the Clerk of Council.

"Virginia Angert
"Clerk of Council
"City of Wooster
"Oct. 15, 29; Nov. 5, 13"

The lower court determined that this notice was in compliance with Section 2.16 of the charter. We agree. The appellation "Proposed New Zoning Code and Map for the City of Wooster" is sufficient in our minds to meet the charter's requirement of title and summary.

Accordingly, the assignment of error is overruled; the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN and HUNSICKER, JJ., concur.

HUNSICKER, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.