LARRY A. JONES, SR., J.:
{¶ 1} The relators, Devin Branch, Kelvin Erby, and Tracy Udrija-Peters, have filed a complaint for a writ of quo warranto.[1] The complaint for quo warranto seeks: 1) the removal of the respondents, Earnest Smith and Christopher Pitts, from the positions of councilperson on the East Cleveland City Council ("Council"); 2) the seating of Branch and Erby as councilpersons on the Council; 3) the removal of respondent Khadijah Guy as clerk of the Council; and 4) the seating of Udrija-Peters as clerk of the Council.[2] For the following reasons, we grant in part and deny in part the request for a writ of quo warranto.
I. THE FACTS
{¶ 2} On December 6, 2016, a special election was held in order to determine whether the mayor of the city of East Cleveland ("City") and the president of Council should be recalled. The mayor and the president of Council were recalled as certified by the Cuyahoga County Board of Elections. As a result of the certification of the recall election, the mayor and the president of the Council were removed from office. The vice president of the Council, Brandon King, was sworn in as mayor of the City on December 20, 2016, pursuant to § 114 of the East Cleveland City Charter ("Charter"). Two empty councilperson positions were created as a result of the recall and the elevation of King as the mayor of the City.
{¶ 3} On December 29, 2016, Nathaniel Martin, Barbara Thomas, and Joie Graham, the remaining members of the Council, convened a special closed-door executive session council meeting in order to interview potential candidates for the two *90 empty councilperson positions. At the conclusion of the closed-door executive session, the Council meeting was continued as a public hearing, without the presence of Graham. Martin and Thomas then "appointed" Branch and Erby to fill the vacant councilperson seats. The newly formed Council then voted to remove Guy as Council clerk and appointed Udrija-Peters as the Council clerk.
{¶ 4} A dispute arose between Council members, the mayor, and the law director over the validity of Council's actions in filling the vacant councilperson vacancies and the termination of the Council clerk. On January 23, 2017, King appointed Smith and Pitts to the councilperson seats as previously filled by Branch and Erby. With the support of King, Hemmons, and other city employees, Smith and Pitts took the councilperson seats and excluded Branch and Erby. In addition, Udrija-Peters was removed as Council clerk and Guy was reinstated as the Council clerk through the actions of King, Hemmons, and other city employees. On January 25, 2017, the relators filed their complaint for a writ of quo warranto.
II. LEGAL ANALYSIS
{¶ 5} The Supreme Court of Ohio has firmly established that quo warrant is the sole remedy that may be employed to challenge the right of any person to hold a public office.
Quo warranto is the exclusive remedy to litigate the right of a person to hold a public office. State ex rel. Deiter v. McGuire , 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, ¶ 20 ; see also , State ex rel. Ebbing v. Ricketts , 133 Ohio St.3d 339, 2012-Ohio-4699, 978 N.E.2d 188, ¶ 8, citing State ex rel. Johnson v. Richardson , 131 Ohio St.3d 120, 2012-Ohio-57, 961 N.E.2d 187, ¶ 15. In quo warranto, judgment may be rendered on the right of the defendant to hold the contested office and the right of the person alleged to be entitled to hold the office "or only upon the right of the defendant, as justice requires." Deiter at ¶ 22.
State ex rel. Flanagan v. Lucas , 139 Ohio St.3d 559, 2014-Ohio-2588, 13 N.E.3d 1135. See also State ex rel. Price v. Columbus, Delaware & Marion Elec. Co. , 104 Ohio St. 120, 135 N.E. 297 (1922) ; Sections 2 and 3 of Article IV of the Constitution of Ohio.
{¶ 6} Thus, this court is required to answer two questions in deciding whether a writ of quo warranto should issue: 1) the right of Smith and Pitts to hold the positions of councilperson; and 2) the right of Branch and Erby to assume the positions of councilperson.
A. The Appointments of Smith and Pitts to Council
{¶ 7} Section 100 of the Charter provides that:
When the office of a member of Council shall become vacant, the vacancy shall be filled by election for the unexpired term by a majority vote of all the remaining members of the Council. If the Council fails within 30 days to fill such a vacancy, the President of Council shall fill it by appointment.
{¶ 8} The language of Section 100 mirrors the language of R.C. 731.43, which deals with filling vacancies in the legislative body of a village, except that R.C. 731.43 provides that the power to fill a legislative vacancy falls to the mayor if Council does not act within 30 days of the creation of the vacancy. R.C. 733.31(C) provides that any vacancy in the legislative body of a city is to be filled as set forth in R.C. 731.43. We find that a conflict exists between the Charter and R.C. 731.43, because under the Charter only Council or the Council president may fill a vacancy in *91 Council. Contrary to Section 100 of the Charter, a mayor may fill a vacancy in Council pursuant to R.C. 731.43 and 733.31(C).
{¶ 9} The Supreme Court of Ohio has determined that when a conflict exists between a city charter and statutory provisions governing the filling of a legislative vacancy, the charter takes precedence and must be followed to fill any legislative vacancy.
1. The portion of Section 731.43, Revised Code, authorizing the mayor of a municipal corporation to fill by appointment a vacancy in the office of a member of the legislative authority of such municipal corporation, conflicts with Section 5 of the Columbus City Charter providing that "vacancies in council shall be filled by the council for the remainder of the unexpired term."
2. The facts, that a vacancy occurs in the Columbus city council and that council fails for over 30 days to fill such vacancy, do not authorize the mayor of Columbus to fill such vacancy by appointment.
State ex rel. Devine v. Hoermle , 168 Ohio St. 461, 156 N.E.2d 131 (1959), paragraphs one and two of the syllabus.
{¶ 10} The Supreme Court of Ohio, in Hoermle , further stated that:
The adoption of provisions in a city's charter, relative to appointments to fill vacancies in the legislative body of such city, is authorized by the provisions of Sections 3 and 7 of Article XVIII of the Ohio Constitution granting authority to exercise all powers of local self-government. Where such charter provisions specify who shall make such appointments, statutory provisions authorizing an appointment by someone else cannot apply in the absence of their adoption by other provisions of the charter.
Id. at 462, 156 N.E.2d 131, citing State, ex rel. Bindas v. Andrish , 165 Ohio St. 441, 136 N.E.2d 43 (1956).
{¶ 11} The Supreme Court of Ohio, in Hoermle also stated that:
Section 5 of the [city] charter grants the power to fill vacancies to council and to no one else. Applying the doctrine of expressio unius est exclusio alterius , as we did in State ex rel. Bindas v. Andrish , supra , it is apparent that the charter denies such power to the mayor. It necessarily follows that the statute giving the mayor such power under certain circumstances conflicts with section 5 of the charter.
Id. at 463, 156 N.E.2d 131.
{¶ 12} This court, in Kanter v. Cleveland Hts. , 8th Dist. Cuyahoga, 2017-Ohio-1038, 86 N.E.3d 1022, examined the issues of local self-government, the Home Rule Amendment, and conflict with general laws, and held that:
Municipalities do not have to enact a charter to have the power over local self-government provided to them in the Ohio Constitution. N. Ohio Patrolmen's Benevolent Assn. v. Parma , 61 Ohio St.2d 375, 379-380, 402 N.E.2d 519 (1980). But municipalities exercise the powers of local self-government to the fullest by adopting a charter pursuant to Section 7, Article XVIII of the Ohio Constitution, which provides that "[a]ny municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."
The words "as are not in conflict with general laws" in Section 3, Article XVIII of the Ohio Constitution, have been universally construed to place a limitation on a municipality's power to "adopt and enforce * * * local police, sanitary and other similar regulations," but not on *92 the power of local self-government. Hills & Dales, Inc. v. Wooster , 4 Ohio App.3d 240, 242, 4 Ohio B. 432, 448 N.E.2d 163 (9th Dist. 1982), citing State ex rel. Canada v. Phillips , 168 Ohio St. 191, 151 N.E.2d 722 (1958). "Police powers" encompass the areas of public health, safety, morals and general welfare. Hills & Dales at id.
In Mendenhall v. Akron , 117 Ohio St.3d 33, 2008-Ohio-270, 881 N.E.2d 255, the Ohio Supreme Court explained that courts use a three-part test to evaluate claims that a municipality has exceeded its powers under the Home Rule Amendment. First, courts must determine if the ordinance is an exercise of the city's "police power," rather than of local self-government. Id. at ¶ 17, citing Canton v. State , 95 Ohio St.3d 149, 2002-Ohio-2005, 766 N.E.2d 963, ¶ 9. "If an allegedly conflicting city ordinance relates solely to self-government, the analysis stops, because the Constitution authorizes a municipality to exercise all powers of local self-government within its jurisdiction." Id. at ¶ 18, quoting Am. Fin. Servs. Assn. v. Cleveland , 112 Ohio St.3d 170, 2006-Ohio-6043, 858 N.E.2d 776, ¶ 23.
Kanter v. Cleveland Hts. , supra , ¶ 17-19.
{¶ 13} The right to determine who may fill a vacancy on Council relates solely to self-government and does not involve an exercise of any police power. Therefore, our analysis of whether the Charter or R.C. 731.43 controls ends, and we find that Section 100 of the Charter must be employed to fill any vacancy that exists in the Council. Simply stated, the charter provision controls over the state statute.
{¶ 14} The language of Section 100 of the Charter provides that the sole authority to fill a councilperson vacancy resides with Council. Even after 30 days, the Charter provides that the president of Council "shall fill [the vacancy] by appointment." Respondents argue that because there was no Council president, the mayor's appointments were appropriate. For the logic of the respondents argument to succeed, Section 100 of the East Cleveland Charter and R.C. 731.43 must not be in conflict. Because Section 100 of the Charter and R.C. 731.43 conflict, the mayor possesses no authority to fill any vacancy in Council. Compare State ex rel. Brown v. Reesman , 63 Ohio St.2d 130, 407 N.E.2d 14 (1980). In addition, we find that § 113(A) of the Charter does not provide the mayor with the power to fill a vacancy in Council, which provides that "[t]he Mayor shall supervise the administration of all the affairs of the City * * * except the Council and as otherwise provided by this Charter , * * *."
{¶ 15} That is not to say that in the absence of a Council president, no appointment could be made. Council could still act to fill the vacancy or Council could act to select a president. Rule 23(C) in the East Cleveland Codified Ordinances provides for the filling of vacancies in the office of president or vice president of Council. It states, "[w]hen a vacancy occurs in the office of President or Vice President, it shall be filled, by motion, by the vote of three-fifths of the members of Council." A vote of two of the remaining three members of Council would be sufficient given that two-thirds is greater than three-fifths.
{¶ 16} Therefore, Branch and Erby have demonstrated that Smith and Pitts were unauthorized to hold the office of councilperson by the mayor's appointment. We find that Smith and Pitts possessed no right, at the time of the filing of the complaint for a writ of quo warranto, to hold the appointed position of councilperson.
B. The Appointments of Branch and Erby to Council
{¶ 17} "[Q]uo warranto is employed to test the actual right to an office.
*93 However before a party is entitled to maintain an action in quo warranto, he must not only show his own right to the office but also establish that another is actually holding office." (Citations omitted.) Parma v. Cleveland , 9 Ohio St.3d 109, 112, 459 N.E.2d 528 (1984), citing State ex rel. Mikus v. Chapla, 1 Ohio St. 2d 174, 205 N.E.2d 663 (1965) ; State ex rel. Heer v. Butterfield , 92 Ohio St. 428, 111 N.E. 279 (1915), paragraph one of the syllabus. A private citizen may maintain an action in quo warranto where the claim to office is made in good faith and on reasonable grounds. State ex rel. Halak v. Cebula , 49 Ohio St.2d 291, 293, 361 N.E.2d 244 (1977).
{¶ 18} Here, Branch and Erby were appointed by Council to serve as councilpersons. While the validity of those appointments will be analyzed below and ultimately rejected, this should not lead to the conclusion that Branch and Erby do not possess a good-faith belief based on reasonable grounds, that they are entitled to hold office as councilpersons. Branch and Erby submitted to interviews and were selected as a part of the official process to fill vacant councilperson seats. The Halak court held that a mere possibility of appointment was not sufficient to constitute a good-faith belief based on reasonable grounds. Id. Herein, Branch and Erby were actually appointed to fill seats by members of Council.
{¶ 19} Therefore, Branch and Erby have sufficiently satisfied the good faith requirement to maintain an action in quo warranto. That does not mean, however, that they are entitled to fill the councilperson positions:
This is not to say that a person who brings a quo warranto case in good faith and on reasonable grounds will automatically replace the incumbent if he or she is ousted. We have held that "a relator need not prove his own title beyond all doubt. He need only establish his claim 'in good faith and upon reasonable grounds.' "
State ex rel. Flanagan v. Lucas , 139 Ohio St.3d 559, 2014-Ohio-2588, 13 N.E.3d 1135, ¶ 23, State ex rel. Hanley v. Roberts , 17 Ohio St.3d 1, 6, 476 N.E.2d 1019 (1985), quoting State ex rel. Ethell v. Hendricks , 165 Ohio St. 217, 135 N.E.2d 362 (1956), at paragraph three of the syllabus.
{¶ 20} Branch and Erby must still demonstrate their own right to the office. They must show that a vote of the majority of remaining councilpersons occurred to appoint them to fill the vacant seats.
{¶ 21} Section 100 of the Charter indicates that a majority vote of the remaining members of Council shall vote to fill any vacant seat. Therefore, a vote of two out of three remaining members could constitute a majority vote. State ex rel. Flanagan v. Lucas , 139 Ohio St.3d 559, 2014-Ohio-2588, 13 N.E.3d 1135.
{¶ 22} Respondents contend that there was not a quorum necessary for such a vote.
{¶ 23} Section 105 of the Charter defines a quorum:
A majority of all the members elected to the Council shall constitute a quorum, but a less number may adjourn from day to day and compel the attendance of absent members in such manner and under such penalties as may be prescribed by ordinance. The Council shall legislatively act only by ordinance or resolution. The affirmative vote of at least three members shall be necessary to adopt any ordinance or resolution; and the vote upon the passage of all ordinances and resolutions shall be taken by "yeas" and "nays" and entered upon the journal.
{¶ 24} This provisions specifies that Council may only legislatively act by *94 ordinance or resolution, but an act of filling a vacancy in Council is not a legislative act. "An election by council to fill a vacancy does not constitute the adoption of an ordinance or a resolution." State ex rel. Smith v. Nazor , 135 Ohio St. 364, 367, 21 N.E.2d 124 (1939). Therefore, a quorum of three members is not required because this section does not apply.
{¶ 25} Even if it did, because there were only three elected Council members at the point the meeting was called, two members may constitute a quorum. Further, Section 105 goes on to state that three affirmative votes are required to adopt an ordinance or resolution. The appointment of councilpersons to fill vacant seats is neither an ordinance nor a resolution. Therefore, three votes are not required. As the quorum requirement was inapplicable or was met in this case, a simple majority vote was all that was required to fill the vacant councilperson seats.
{¶ 26} Whether a vote actually occurred to fill the councilperson vacancies is a necessary question that must be answered in the affirmative for relators Branch and Erby to satisfy the requirements for the issuance of a writ of quo warranto in their favor.
{¶ 27} Section 105 of the Charter indicates that all ordinances and resolutions shall be passed by affirmative vote: "and the vote upon the passage of all ordinances and resolutions shall be taken by 'yeas' and 'nays' and entered upon the journal." The filling of vacancies is not required to be made by ordinance or resolution. Nazor , 135 Ohio St. at 367, 21 N.E.2d 124 ; see also R.C. 731.17(B) ("[a]ction by the legislative authority, not required by law to be by ordinance or resolution, may be taken by motion approved by at least a majority vote of the members present at the meeting when the action is taken").
{¶ 28} Further, Rule 20 set forth in East Cleveland Codified Ordinances, Section 113 provides,
[e]very member present, when a question is put, shall vote. However, a member expressing a conflict in any particular matter shall be excused and shall leave the meeting temporarily until the matter of conflict has been disposed of.
A "yea" and "nay" vote shall be taken for the passage or adoption of all ordinances and resolutions and shall be taken upon any other motion duly seconded . In taking the "yea" or "nay" vote, the Clerk shall first call the names of the regular members in their alphabetical order, saving the Vice President and President last in that order, and the "yea" and "nay" shall be entered on the Journal.
(Emphasis added.) The minutes of the meeting do not indicate a vote was ever called, motioned, or had.
{¶ 29} The meeting minutes provided in the record indicates that Martin and Thomas "proceeded to name the two new Council members and then vote on President and VP Council positions." The minutes do not indicate a vote occurred to fill the councilperson vacancies. Further, Joie Graham's affidavit indicates that a vote was not taken in closed-door executive session. Finally, Martin's affidavit, at paragraph seven, states, "[w]hen the executive session of the December 29 meeting reconvened as a public meeting, councilperson Joie Graham left the meeting. The remaining Council members proceeded to do business and appoint Devin Branch and Kelvin Erby to fill the vacant Council seats. I swore in Branch and Erby." (Emphasis added.) Conspicuously absent from this language is any mention of a motion or vote. In paragraph eight of the same affidavit, Martin indicated that Council voted to terminate Khadijah Guy. Therefore, relators *95 Branch and Erby have not demonstrated entitlement to the office of councilperson.
{¶ 30} It must also be noted that the question of whether the special session of Council violated open meeting laws is immaterial to the quo warranto action because no vote occurred.
C. Quo Warranto is Moot as to Ward 3 Councilperson Seat
{¶ 31} The complaint for a writ of quo warranto is moot as it relates to the Ward 3 councilperson seat. The Council is composed of two at large seats and one for each of three wards. As the Answer Brief of the respondents indicates, a November 2017 elections resulted in the election of Smith to the Ward 3 Council seat. Brief filed Dec. 18, 2017, pg. 19. Therefore, Smith validly holds this seat independent of the mayor's appointment.
A quo warranto claim must be timely directed to challenge a current term of office rather than an expired one. See [State ex rel. Zeigler v. Zumbar ] 129 Ohio St.3d 240, 2011-Ohio-2939, 951 N.E.2d 405, ¶ 14 ; State ex rel. Devine v. Baxter (1959), 168 Ohio St. 559, 156 N.E.2d 746 (appeal from judgment denying writ of quo warranto to remove members of board of trustees of a cemetery association dismissed as moot when one-year terms to which members were elected had expired, and those members who continued to hold office as trustees did so by authority of their reelection to new terms of office); State ex rel. Paluf v. Feneli (1995), 100 Ohio App.3d 461, 654 N.E.2d 360 (appointee's quo warranto claim to the office of city law director was rendered moot by the expiration of the law director's term of office).
State ex rel. Varnau v. Wenninger , 131 Ohio St.3d 169, 2012-Ohio-224, 962 N.E.2d 790, ¶ 15.
{¶ 32} The claim as to the Ward 3 seat is moot. Unfortunately, nothing in the record indicates to which seats Branch and Erby were appointed. The oaths of office for Smith and Pitts are in the record, so it is clear that Pitts was appointed to a Council-at-large seat and Smith to the Ward 3 seat. Therefore, because it cannot be determined with specificity as to which Council seats Branch and Erby were appointed by Council, we find that it is not possible to determine whether Branch or Erby is entitled to fill the Council-at-large seat through quo warranto.
D. Quo Warranto not Applicable to Position of Clerk of Council
{¶ 33} As stated previously, the writ of quo warranto is treated as a civil action and is used chiefly to question the authority of a claimant asserting right and title to a public office. Price, 104 Ohio St. 120, 135 N.E. 297 ; Flanagan, 139 Ohio St.3d 559, 2014-Ohio-2588, 13 N.E.3d 1135. A public office, to properly come within the scope of a quo warranto, is defined as a public position, to which a portion of the sovereignty of the state, county, municipality or village, either legislative, executive, or judicial, attaches for the time being, and which is exercised for the benefit of the general public. State ex rel. Cain v. Kay , 38 Ohio St.2d 15, 309 N.E.2d 860 (1974). The clerk of Council is not an elected position nor does it constitute a public position to which a portion of the legislative, executive, or judicial authority attach. The clerk of the Council is hired and supervised by Council and is an employee of Council. § 102 of the Charter provides,
[t]he Council shall also choose or appoint a Clerk and such other officers and employees of the sitting Council as it deems necessary, to serve at the pleasure and during the term of the sitting Council. The Clerk shall keep the records of the *96 Council and perform such other duties as may be required by this Charter or the Council but within the scope of the Council's daily business.
Therefore, Udrija-Peters possesses no standing to request a writ of quo warranto regarding the position of clerk of Council. State ex rel. E. Cleveland Fire Fighters Assn., Local 500 v. Jenkins , 96 Ohio St.3d 68, 2002-Ohio-3527, 771 N.E.2d 251.
E. Conclusion
{¶ 34} Accordingly, we grant a writ of quo warranto and deny a writ of quo warranto as follows:
1) Quo warranto, with regard to Earnest Smith is denied as moot. Smith was elected in the general election held in November 2017 and thus legitimately holds the position of councilperson of Ward 3;
2) Quo warranto with regard to Christopher Pitts is granted. The appointment of Pitts as a councilperson, by the mayor on January 23, 2017, was not permitted under the Est Cleveland Charter. Christopher Pitts is ordered to be immediately removed as councilperson at large. The vacancy of the councilperson at large seat is to be filled pursuant to Section 100 of the East Cleveland Charter;
3) Quo warranto with regard to Devin Branch and Kelvin Erby is denied. Branch and Erby have failed to establish that they are entitled to be seated as councilpersons in the East Cleveland Council;
4) Quo warranto with regard to Tracy Udrija-Peters is denied. Udrija-Peters possesses no standing to file a complaint for a writ of quo warranto with regard to the position of clerk of Council for the East Cleveland Council.
{¶ 35} Accordingly, a writ of quo warranto is granted in part and denied in part. Each party to bear their own costs. The court directs the clerk of courts to serve all parties with notice of this judgment and the date of entry upon the journal as required by Civ.R. 58(B).
{¶ 36} Writ granted in part and denied in part.
MARY EILEEN KILBANE, P.J., and TIM McCORMACK, J., CONCUR

The relators also seek an alternative writ of mandamus, a temporary restraining order, a preliminary injunction, and a permanent injunction. The request for mandamus is not well taken based upon our disposition of the complaint for a writ of quo warranto. In addition, the Ohio Constitution does not vest this court with original jurisdiction to issue either a declaratory judgment or injunctive relief. Section 2, Article IV, Ohio Constitution ; State ex rel. Pressley v. Indus. Comm ., 11 Ohio St.2d 141, 228 N.E.2d 631 (1967).

The complaint for a writ of quo warranto also names as respondents Brandon King, mayor of East Cleveland; Willa Hemmons, the law director of East Cleveland; Belinda Kyle, executive assistant to the mayor/human resources director; and Joie Graham, councilperson. The complaint for a writ of quo warranto fails to state any claims against King, Hemmons, Kyle, and Graham.