THE STATE, EX REL. CORRIGAN, PROS. ATTY., ET AL., APPELLANTS, *v.*
MCALLISTER, JUDGE, APPELLEE.

[Cite as State, ex rel. Corrigan, *v.* McAllister (1985), 18 Ohio St. 3d 239.]

(No. 84-1357—Decided July 17, 1985.)

*John T. Corrigan*, prosecuting attorney, *Michael S. Nolan* and *Gary W. Eisner*, for appellants.

*Ralph A. McAllister, pro se*, and *Alan J. Sills*, for appellee.

*Per Curiam.* It is well-settled that "[i]n order to grant a writ of mandamus, the court must find that relator has a clear legal right to the relief prayed for, that respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law." *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6 [15 O.O.3d 3], paragraph one of the syllabus; *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, 29, certiorari denied (1983), __ U.S. __, 78 L. Ed. 2d 723; *State, ex rel. Bd. of Commrs.,* v. *Weir* (1983), 6 Ohio St. 3d 381, 383-384.

On the issue of an adequate remedy at law, we have repeatedly held that the extraordinary writ of mandamus will not lie "where the relator has or had available a clear, plain and adequate remedy in the ordinary course of the law." *State, ex rel. Sibarco Corp.,* v. *Berea* (1966), 7 Ohio St. 2d 85, 88 [36 O.O.2d 75]; *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141 [40 O.O.2d 141]; *State, ex rel. Leis,* v. *Outcalt* (1980), 62 Ohio St. 2d 331, 333 [16 O.O.3d 392]. As was recognized in *State, ex rel. Cleveland,* v. *Calandra* (1980), 62 Ohio St. 2d 121, 122 [16 O.O.3d 143], where a party seeking a writ of mandamus possesses a direct appeal to the court of appeals, such avenue of review is a sufficiently plain and adequate remedy which will preclude the issuance of the writ. Accord *State, ex rel. Berger,* v. *McMonagle, supra,* at 30.

Appellant Fencl, if convicted, possesses an adequate remedy in the ordinary course of the law in the form of a discretionary right of appeal to the court of appeals whereby he can obtain review of appellee's decision to deny a special venire. Thus, as to this appellant, the writ should have been denied on the basis of the existence of an adequate remedy at law. On the other hand, the limited right of appeal under R.C. 2945.67(A), as well as double-jeopardy considerations, compels us to conclude that appellant Corrigan is without a clear, plain and adequate remedy at law. Thus, as to this appellant, we proceed to resolve the question of whether a clear legal right existed to have a special venire.

At the time of the issuance of the writ in *State, ex rel. Corrigan,* v. *McMonagle,* R.C. 2901.02(B) provided that "[a]ggravated murder, and any offense for which death may be imposed as a penalty, is a capital offense."

In *State* v. *Henry, supra,* we concluded that pursuant to the foregoing language an aggravated murder is a capital offense and hence subject to further protections provided under R.C. Title 29, regardless of whether death may be imposed as a result of the conviction. Included within those further protections is the requirement that a special venire be provided in capital cases.

Appellant Corrigan first suggests that a special venire is required in the cause pending below on the authority of *State, ex rel. Corrigan,* v. *McMonagle, supra.* According to appellant, the legislative amendment to R.C. 2901.02(B) was in place as of the date of the decision in *State, ex rel. Corrigan,* in July 1984, an amendment of which this court was aware as evinced in the footnote appearing at 12 Ohio St. 3d at 16. Appellant therefore suggests that we have interpreted the amendment so as to apply only to capital trials where the crime has been committed subsequent to the legislative amendment to R.C. 2901.02(B). We disagree.

In *State, ex rel. Corrigan,* this court was confronted with the issue of whether an accused was entitled to a special venire when the trial was scheduled to commence prior to the effective date of the amendment to R.C. 2901.02(B), whereas in the case at bar the issue is whether the accused is entitled to a special venire in a trial scheduled subsequent to the effective date of the amendment. This distinction alone serves to significantly distinguish our holding in *State, ex rel. Corrigan,* from the instant cause.

Alternatively, appellant maintains that to deny the accused a special venire by virtue of the April 1984 amendment to R.C. 2901.02(B) would contravene the *ex post facto* prohibition contained under Section 10, Article I of the United States Constitution.

On numerous occasions the United States Supreme Court has addressed the parameters of the *ex post facto* prohibition. As stated by Justice Marshall in the majority opinion in *Weaver* v. *Graham* (1981), 450 U.S. 24, 29: "* * * [T]wo critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."

In *Beazell* v. *Ohio* (1925), 269 U.S. 167, 169-170, Justice Stone summarized the following elements which characterize *ex post facto* legislation:

"It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*"

Thus, in *Beazell,* the court rejected an *ex post facto* contention when an Ohio law, formerly providing for separate trials when two or more persons

were jointly indicted for a felony, was amended to require a joint trial unless the court for good cause shown ordered separate trials.

In *Dobbert* v. *Florida* (1977), 432 U.S. 282, the court examined several *ex post facto* claims arising under the Florida death-penalty statute. At the time the petitioner committed first-degree murder, the Florida death-penalty scheme provided that a jury recommendation of mercy was binding and hence not reviewable by the trial judge. Prior to petitioner's trial, the statute was amended to provide that notwithstanding a recommendation by the jury, the trial court was empowered to enter a sentence of either life imprisonment or death. At the conclusion of petitioner's sentencing hearing the jury recommended by a ten to two majority that a sentence of life imprisonment be imposed. Pursuant to his newly granted authority under the Florida statute, the trial judge overruled this recommendation in favor of the death sentence.

In rejecting petitioner's *ex post facto* claim, Justice Rehnquist stated for the majority at 293-294 as follows:

"It is equally well settled, however, that '[t]he inhibition upon the passage of *ex post facto* laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.' *Gibson* v. *Mississippi*, 162 U.S. 565, 590 (1896). '[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, see *Malloy* v. *South Carolina* [1915], 237 U.S. 180, 183, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.' *Beazell* v. *Ohio*, *supra*, at 171.

"Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto*. For example, in *Hopt* v. *Utah*, 110 U.S. 574 (1884), as of the date of the alleged homicide a convicted felon could not have been called as a witness. Subsequent to that date, but prior to the trial of the case, this law was changed; a convicted felon was called to the stand and testified, implicating Hopt in the crime charged against him. Even though this change in the law obviously had a detrimental impact upon the defendant, the Court found that the law was not *ex post facto* because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict. *Id.*, at 589.

"In *Thompson* v. *Missouri*, 171 U.S. 380 (1898), a defendant was convicted of murder solely upon circumstantial evidence. His conviction was reversed by the Missouri Supreme Court because of the inadmissibility of certain evidence. Prior to the second trial, the law was changed to make the evidence admissible and defendant was again convicted. Nonetheless, the court held that this change was procedural and not violative of the *Ex Post Facto* Clause.

"In the case at hand, the change in the statute was clearly procedural. The new statute simply altered the methods employed in determining

whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime."

In concluding that the statutory change making jury verdicts in death penalty cases advisory in nature was a procedural change and not substantive, the court reasoned that the following language from *Hopt* v. *Utah, supra,* controlled petitioner's *ex post facto* contention: " 'The crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute.' " *Id.* at 294, quoting 110 U.S. at 589-590.

Likewise, in the present cause neither the crime, the punishment therefor nor the quantity or degree of proof necessary to sustain a conviction has been affected by the amendment to R.C. 2901.02(B). Stated otherwise, appellant has failed to delineate any resulting disadvantage by proceeding with the trial against the defendant under R.C. 2901.02(B), as amended. Accord *Lindsey* v. *Washington* (1937), 301 U.S. 397, 401; *Calder* v. *Bull* (1798), 3 U.S. (3 Dall.) 386, 390.

Appellant, however, seeks reversal of the judgment of the court of appeals on authority of *Thompson* v. *Utah* (1898), 170 U.S. 343. In *Thompson,* the defendant was tried and convicted by a jury of twelve persons while Utah was a territory. Later, a new trial was granted, but by that time Utah had gained statehood. Under the Utah Constitution, the defendant was entitled to, and received, a trial by a jury of eight. Upon review, the high court reversed the conviction, finding Utah's constitutional provision in contradiction of the *Ex Post Facto* Clause. A main ingredient in the court's decision was its belief that a defendant's right to a trial by jury under the Sixth Amendment included the right to have a jury of twelve persons, as at common law, "neither more nor less." *Id.* at 349.

Two considerations serve to distinguish *Thompson* from the within appeal. First, in contrast to *Thompson,* the present case involves no reduction in the size of the jury that will determine the defendant's guilt or innocence. Second, at the time *Thompson* was decided, a jury of twelve was viewed as a substantial right. Since that time, however, the high court has retreated from this view and held that insofar as crimes which are not subject to the death penalty are concerned, a state may utilize a jury of six. See *Williams* v. *Florida* (1970), 399 U.S. 78. Accordingly, we find appellant's reliance on *Thompson* to be misplaced.

For all of the foregoing reasons, the judgment of the court of appeals denying the writ is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.