THE STATE, EX REL. MILLER,
PROSECUTING ATTORNEY, *v.*
GILLIE, JUDGE.

(No. 86AP-101—Decided
February 12, 1986.)

*Michael Miller,* prosecuting attorney, and *Alan C. Travis,* for relator.

*David J. Graeff,* for respondent.

*Daniel M. Hunt, Tataru, McInturff, Wallace & Warner* and *Roger Warner,* for intervenor Dennis Winkfield.

MOYER, P.J. This matter is before us on the petition of Michael Miller, Prosecuting Attorney of Franklin County, Ohio, relator, for a writ of mandamus or, in the alternative, for a writ of prohibition. Relator's verified petition alleges that Dennis Winkfield was indicted by the Franklin County Grand Jury for the crime of aggravated murder in violation of R.C. 2903.01 with specifications pursuant to R.C. 2929.04, which permit the imposition of the death penalty; that respondent, Judge William T. Gillie, Judge of the Court of Common Pleas, Franklin County, Ohio, has presided over the case in the trial court and over the "initial" voir dire of prospective jurors; that, during the course of such voir dire, seven prospective jurors each have unequivocally stated that under no circumstances would such juror follow the instruction of the trial judge and consider fairly the imposition of a sentence of death; that said prospective jurors were each challenged for cause by relator; that respondent has acknowledged that such prospective jurors have unequivocally stated that they would refuse to follow the instructions of respondent and consider fairly the imposition of a sentence of death; and that respondent has failed to excuse such prospective jurors upon relator's challenge; that respondent is under a clear legal duty to excuse such jurors; and that relator has no adequate remedy in the ordinary course of law.

Relator requests this court to issue a

peremptory writ of mandamus in the first instance commanding respondent to immediately excuse the prospective jurors who have unequivocally stated they will not consider the imposition of a death sentence or for an alternative peremptory writ of prohibition.

Dennis Winkfield, the defendant in the trial court, has filed a motion to intervene to which relator has filed no objection. The motion to intervene has been sustained.

Intervenor Winkfield and respondent have filed motions to dismiss.

Although we have no record of the proceedings in the trial court, we have been provided with a copy of the decision and entry of the trial court entered February 5, 1986.

Our authority to grant a writ of mandamus is stated in *State, ex rel. Berger,* v. *McMonagle* (1983), 6 Ohio St. 3d 28, at 29, as follows:

"* * * [I]n order for a writ of mandamus to issue the relator must demonstrate '(1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the acts, and (3) that relator has no plain and adequate remedy in the ordinary course of the law.' * * *"

A peremptory writ of mandamus in the first instance may be issued where the relator's right to require the performance of an act is clear and it is apparent that no excuse can be given by the person against whom the mandamus action is filed for not performing the act. R.C. 2731.06.

Intervenor argues in his motion to dismiss that respondent has no clear legal duty to dismiss the prospective jurors for cause and that there is no showing that respondent's failure to dismiss jurors prior to the general voir dire has prejudiced relator's cause.

Respondent argues in his motion to dismiss that relator has an adequate remedy at law and that mandamus or prohibition, therefore, are not proper.

Respondent cites R.C. 2945.67(A), which permits a prosecuting attorney to appeal by leave of the court to which the appeal is taken, certain decisions except the final verdict in a criminal case. He also cites *State* v. *Keeton* (1985), 18 Ohio St. 3d 379, to support his contention that relator's remedy is the filing of a motion for leave to appeal. See, also, *State, ex rel. Lighttiser,* v. *Spahr* (1985), 18 Ohio St. 3d 234; *State, ex rel. Corrigan,* v. *Griffin* (1984), 14 Ohio St. 3d 26; and *State, ex rel. Leis,* v. *Kraft* (1984), 10 Ohio St. 3d 34; but, cf., *State, ex rel. Corrigan,* v. *McAllister* (1985), 18 Ohio St. 3d 239.

Our consideration of the arguments of counsel and of the decision rendered by respondent causes us to conclude that the granting of a peremptory writ and a determination of whether relator should have filed an application or a motion for leave to appeal are premature, since respondent has not yet ruled upon relator's challenges for cause, if made. Respondent stated in his decision and entry that:

"Counsel for the State and for the defense have offered arguments and appropriate case authority from which the Court draws the opinion that the current state of law in the State of Ohio is to the effect that it would not be error to exclude prospective jurors whose views are such as indicated to the Court in this case, but that the decisions to date have not reached a pronouncement that it would be error to retain such prospective jurors.

"It is the Court's opinion that in the absence of mandatory authority the opportunity for a fair trial for the defendant is enhanced by the inclusion of jurors who are of the state of mind as outlined herein on the list of prospective jurors for general voir dire purposes. Their names will therefore be retained on the list."

Although in oral argument counsel referred to statements of respondent

that were apparently made during the proceedings in the trial court that would indicate a more definitive attitude of respondent, we have only the written decision and entry of respondent by which to determine the issues in this case. It is not clear from the decision whether the state formally challenged the seven prospective jurors for cause; certainly there is no indication that respondent ruled on challenges. What is clear is that respondent has not yet ordered that the seven prospective jurors will indeed serve as jurors in the trial of this case. He has stated that all of the seven prospective jurors have indicated to him that they could not sign a verdict recommending the imposition of a death sentence after a mitigation hearing. By permitting the names of the seven to remain on the list of prospective jurors for the general voir dire, respondent has not yet entered an order having the effect of seating the seven prospective jurors on the jury. Instead he appears to have reserved a ruling for future consideration at the "general voir dire." This is not inconsistent with the provision of R.C. 2945.25(C) that "* * * [a]ll parties shall be given wide latitude in voir dire questioning in this regard." Moreover, R.C. 2945.26 provides that "[c]hallenges for cause shall be tried by the court on the oath of the person challenged, or other evidence, and shall be made before the jury is sworn." Presumably, the trial court does not consider the trial upon any such challenge completed and has not yet entered an order granting or denying any such challenge. Accordingly, to the extent intervenor's motion to dismiss argues that relator's petition is filed prematurely, said motion to dismiss is sustained, respondent's motion to dismiss is overruled, and the writ of mandamus or, in the alternative, the writ of prohibition is denied.

Although we assume respondent will correctly rule in accordance with R.C. 2945.25(C) on any challenges for cause directed at the seven prospective jurors during the general voir dire, in the interest of judicial economy, we offer the following observations.

In *Witherspoon* v. *Illinois* (1968), 391 U.S. 510 [46 O.O.2d 368], the United States Supreme Court held that a convicted defendant could not be sentenced to death by a jury from which forty-seven prospective jurors had been excluded as the result of successful challenges for cause on the basis of their general attitudes toward the death penalty, or expressed conscientious or religious scruples against its infliction. Following *Witherspoon,* in 1981, the Ohio General Assembly amended R.C. 2945.25 to provide, in pertinent part, that a person called as a juror on a criminal case may be challenged for the following cause:

"(C) In the trial of a capital offense, that he unequivocally states that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case. * * *"

The statute was interpreted by the Ohio Supreme Court in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164. In its opinion the court stated that:

" '* * * [T]he right to a jury trial includes the right to a jury venire drawn from a representative cross-section of the community, it does not include the right to be tried by jurors who are unable or unwilling to follow the law and the instructions of the trial judge in a capital case.' " *Id.* at 188.

The court distinguished *Witherspoon* and rejected a challenge to the trial court's removal of veniremen who indicated they could not vote for the death penalty under any circumstance.

More recently, the United States Supreme Court reviewed *Witherspoon* and subsequent cases, in *Wainwright* v. *Witt* (1985), 469 U.S. ___, 83 L. Ed. 2d 841, 846, and held that a prospective

juror was properly challenged for cause after the juror engaged in the following discourse with trial counsel:

" '[Q. prosecutor:] Now, let me ask you a question, ma'am. Do you have any religious beliefs or personal beliefs against the death penalty?

" '[A. Colby:] I am afraid personally but not—

" '[Q]: Speak up, please.

" '[A]: I am afraid of being a little personal, but definitely not religious.

" '[Q]: Now, would that interfere with you sitting as a juror in this case?

" '[A]: I am afraid it would.

" '[Q]: You are afraid it would?

" '[A]: Yes, Sir.

" '[Q]: Would it interfere with judging the guilt or innocence of the Defendant in this case?

" '[A]: I think so.

" '[Q]: You think it would.

" '[A]: I think it would.

" '[Q]: Your honor, I would move for cause at this point.' "

In clarifying *Witherspoon,* the Supreme Court stated that the standard to be used for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is:

"* * * [W]hether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' * * *" *Wainwright* v. *Witt, supra,* at 851-852.

The court further observed that the standard does not require that a juror's bias be proved with "unmistakable clarity." The court also stated:

"* * * Here, as elsewhere, the quest is for jurors who will conscientiously apply the law and find the facts. That is what an 'impartial' jury consists of, and we do not think, simply because a defendant is being tried for a capital crime, that he is entitled to a legal presumption or standard that allows jurors to be seated who quite likely will be biased in

his favor." *Wainwright* v. *Witt, supra,* at 851.

Finally, the Ohio Supreme Court, in *State* v. *Mapes* (1985), 19 Ohio St. 3d 108, held that the requirement of R.C. 2929.03(C)(2)(b), that the jury which determines guilt must also perform the sentencing phase, is constitutional. Intervenor argues that the jury which determines the sentencing recommendation need not be the trial jury. Such an argument is contradictory to the very language of R.C. 2929.03(D)(2), which states, in pertinent part, as follows:

"(2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the *trial* jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the *trial* jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the *trial* jury shall recommend to the court that the sentence of death be imposed on the offender. * * *" (Emphasis added.)

We make the foregoing observation in view of the representations of counsel during oral argument that respondent indicated that the jury recommending the sentence could be substantially different than the jury that found defendant guilty. Such a view is not consistent with the law.

Accordingly, we assume that respondent will sustain relator's challenges for cause after the general voir dire if "none of the seven prospective jurors could, after the mitigation hearing, sign a verdict recommending the imposition of a death sentence," because such a position by said jurors

would prevent or substantially impair the performance of their duties in accordance with their instructions and oaths, since such a statement of attitude by a prospective juror would constitute an unequivocal statement "* * * that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case. * * *"

*Motion to intervene sustained; intervenor's motion to dismiss sustained; respondent's motion to dismiss overruled; writ in mandamus or, in the alternative, the writ of prohibition denied.*

WHITESIDE and NORRIS, JJ., concur.