THE STATE, EX REL. PLAIN DEALER PUBLISHING COMPANY, APPELLANT, *v.* BARNES ET AL., APPELLEES.

[Cite as State, ex rel. Plain Dealer Publishing Co., *v.* Barnes (1988), 38 Ohio St. 3d 165.]

(No. 87-115—Submitted March 1, 1988—Decided August 11, 1988.)

*Baker & Hostetler, Louis A. Colombo* and *David L. Marburger,* for appellant.

*Marilyn G. Zack,* director of law, and *Malcolm C. Douglas,* for appellees.

*Walter, Haverfield, Buescher & Chockley, F. Wilson Chockley, Jr., Michael T. McMenamin* and *Frederick W. Whatley,* urging reversal for *amicus curiae,* Storer Communications, Inc.

*Baker & Hostetler,* urging reversal for *amicus curiae,* Ohio Newspaper Assn.

*American Civil Liberties Union of Cleveland Foundation, Inc., Gordon Beggs, Lois Robinson* and *William P. Marshall,* urging reversal for *amicus curiae,* American Civil Liberties Union of Cleveland.

*Kent Markus* and *William P. Marshall,* urging reversal for *amicus curiae,* Common Cause/Ohio.

MOYER, C.J.

I

At the outset, we consider whether this cause has been rendered moot by adjournment of the meeting at issue. We note that the Cleveland City Council has engaged in a practice of excluding the press and public from certain of its meetings. Such meetings will normally adjourn before the practice of exclusion is subjected to judicial review. Although a case may be moot, a court may hear the appeal where the issues raised are "capable of repetition, yet evading review." *Southern Pacific Terminal Co.* v. *ICC* (1911), 219 U.S. 498, 515. Thus, because this case raises important issues concerning public rights which are "capable of repetition, yet evading review," we conclude it is not moot. *State, ex rel. The Repository,* v. *Unger* (1986), 28 Ohio St. 3d 418, 420, 28 OBR 472, 474, 504 N.E. 2d 37, 39; *Press Enterprise Co.* v. *Superior Court* (1986), 478 U.S. 1, 6. Moreover, in view of the admissions of counsel and in the interest of judicial economy, we proceed to review the case on the merits rather than remand for further fact-finding by the court of appeals.

II

For the reasons set forth below, we find relator is entitled to a peremptory writ of mandamus to compel respondents to open the meetings of

council to the public, pursuant to public rights established under Section 28 of the Charter of the City of Cleveland.

It is well-settled that a writ of mandamus may issue whenever relator demonstrates: (1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the requested act, and (3) that relator has no plain and adequate remedy at law. *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, 40 O.O. 2d 141, 228 N.E. 2d 631, paragraph ten of the syllabus; *State, ex rel. Corrigan,* v. *McAllister* (1985), 18 Ohio St. 3d 239, 240, 18 OBR 296, 297, 480 N.E. 2d 783, 785; *Eudela* v. *Rogers* (1984), 9 Ohio St. 3d 159, 161, 9 OBR 448, 449, 459 N.E. 2d 539, 541.

Relator relies on Section 28 of the Cleveland City Charter and Section 11, Article I of the Ohio Constitution as the source of its right and respondents' duty to permit access to meetings of the Cleveland City Council. It is unnecessary to decide whether the constitutional guarantee of freedom of speech and press under Section 11, Article I of the Ohio Constitution also guarantees the right of access to meetings of municipal legislatures, as the plain and ordinary meaning of Section 28 of the Cleveland City Charter provides for such a right.

Section 28 of the Cleveland City Charter provides:

"At seven o'clock p.m., on the first Monday in January following a regular Municipal election, the Council shall meet at the usual place for holding meetings, at which time the newly-elected members of the Council shall assume the duties of their offices. Thereafter the Council shall meet at such times as may be prescribed by ordinance or resolution. The Mayor, the President of the Council, or any five members thereof may call special meetings of the Council upon at least twelve (12) hours' written notice to each member of the Council, served personally on each member or left at the usual place of residence of such member. Any such notice shall state the subjects to be considered at the meeting and no other subjects shall be there considered. All meetings of the Council or committees thereof shall be public and any citizen shall have access to the minutes and records thereof at all reasonable times."

The charter provides that all meetings of council and committees *shall* be public. The word "shall" establishes a mandatory duty, absent a clear and unequivocal intent that it receive a construction other than its ordinary meaning. *Dorrian* v. *Scioto Conserv. Dist.* (1971), 27 Ohio St. 2d 102, 56 O.O. 2d 58, 271 N.E. 2d 834, paragraph one of the syllabus. The council contends that the words "all meetings of the Council or committees thereof" mean only those three categories described in Section 28 of the charter. Relator emphasizes the word "all" and rejects council's assertion of a right to designate a class of closed executive sessions.

Regardless which interpretation one accepts, it is clear that this prearranged meeting of a majority of council and the mayor at a set time and place was to discuss city business, and falls within the intent of the special meetings category of Section 28 of the charter.

We note that the charter requires *all* meetings of council and its committees to be public, and does so without exception. While Section 24 of the charter provides that "[t]he legislative powers of the City, except as reserved to the people by this Charter, shall be vested in a Council * * *," and Section 2 of the charter further grants implied

powers appropriate to the exercise of enumerated powers,[1] we reject the proposition that council has implied authority to designate and hold closed special meetings of council or committees thereof in contravention of the more specific public duty mandated by Section 28.[2] This conclusion is reinforced by Section 1 of the charter, which provides that all powers "* * * whether expressed or implied, shall be exercised and enforced in the manner prescribed by this Charter * * *."[3] Prior decisions of this court have established the principle that a municipal charter vesting broad powers in the legislative body of a municipality may also contain specific prohibitions and restrictions upon the exercise of those powers. See *State, ex rel. McClure,* v. *Hagerman* (1951), 155 Ohio St. 320, 44 O.O. 309, 98 N.E. 2d 835, paragraph one of the syllabus; *Reed* v. *Youngstown* (1962), 173 Ohio St. 265, 19 O.O. 2d 119, 181 N.E. 2d 700, paragraph two of the syllabus, and its progeny (ordinances and resolutions in conflict with provisions of city charter invalid). See, also, *State, ex rel. Elchlinger,* v. *Ramser* (1961), 113 Ohio App. 289, 17 O.O. 2d 275, 172 N.E. 2d 731 (administrative rules in conflict with provisions of city charter invalid).

*Amici,* Storer Communications, Inc. and the Ohio Newspaper Association, in support of relator, propose that we apply the statutory definition of "meeting," found in Ohio's sunshine law under R.C. 121.22(B)(2): "* * * any prearranged discussion of the public business of the public body by a majority of its members." We find it unnecessary to decide the applicability of the sunshine law because the charter language expressly provides for open meetings and encompasses the meeting at issue.

However, we hold that as used in Section 28 of the Charter of the City of Cleveland, a "meeting" of the Cleveland City Council or any of its committees means *any* assemblage of the city council or its committees where a majority of members constituting the

---

[1] Section 2 of the Cleveland City Charter states:

"The enumeration of particular powers by this Charter shall not be held or deemed to be exclusive but, in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof, the City shall have, and may exercise all other powers which, under the Constitution and laws of Ohio, it would be competent for this Charter specifically to enumerate."

[2] In harmony with our conclusion is the decision in *Hills & Dales, Inc.* v. *Wooster* (1982), 4 Ohio App. 3d 240, 243-244, 4 OBR 432, 435, 448 N.E. 2d 163, 167, where the court of appeals examined the Wooster City Charter but found nothing mandating that the city council or city planning commission must hold all meetings open to the public. Thus, closed sessions were not precluded by charter language. Compare *Piqua* v. *Piqua*

*Daily Call* (1979), 64 Ohio App. 2d 222, 226-227, 18 O.O. 3d 168, 171, 412 N.E. 2d 1331, 1335, wherein the Second District Court of Appeals concluded that Section 4 of the Piqua City Charter, which required "[a]ll meetings of the commission and committees thereof shall be open to the public * * *," did not prohibit the established parliamentary practice of executive sessions. The Second District Court of Appeals concluded these sessions could be closed to the public relying, in part, upon similar reasoning in *Dayton Newspapers* v. *Dayton* (1971), 28 Ohio App. 2d 95, 57 O.O. 2d 170, 274 N.E. 2d 766. These latter two cases, *inter alia,* are contrary to the result we reach today.

[3] City council remains free under Section 9, Article XVIII of the Ohio Constitution to propose a charter amendment providing for an additional category of deliberative meetings closed to the public.

body are in attendance and the gathering is arranged for the purpose of discussing public business.

It remains to determine whether relator had a plain and adequate remedy at law.

Respondents assert that relator had a plain and adequate remedy at law by way of mandatory injunction or declaratory judgment. We have held to the contrary in *State, ex rel. Fenske,* v. *McGovern* (1984), 11 Ohio St. 3d 129, 11 OBR 426, 464 N.E. 2d 525, paragraphs one and two of the syllabus; *State, ex rel. Pressley,* v. *Indus. Comm.,* supra, paragraph six of the syllabus. Although the availability of declaratory judgment may be considered by the court as an element in exercising its discretion whether a writ should issue, it would not be a complete remedy in this case absent ancillary injunctive relief, and therefore is not a basis upon which to deny the writ. *State, ex rel. Fenske,* v. *McGovern, supra,* paragraph two of the syllabus.

Accordingly, we find that respondents should have admitted relator's employee, Steven Luttner, to the meeting at issue. The judgment of the court of appeals is reversed and the writ of mandamus is hereby allowed as set forth above.

*Judgment reversed
and writ allowed.*

SWEENEY, LOCHER, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

SWEENEY and DOUGLAS, JJ., concur separately.

HOLMES, J., concurs in judgment only.

DOUGLAS, J., concurring. I concur because I agree with what the majority opinion decides. My concern is that we are only deciding that meetings of the Cleveland City Council must be open to the public. Since the charter of the city already makes that fact clear, it would seem that since it was necessary for relator to file this action in the first place, more needs to be decided.

I know that our decision says that the reporter should have been admitted to the assembly of councilpersons that took place on November 18, 1986. Further, I know that our decision says that "* * * relator is entitled to a peremptory writ of mandamus to compel respondents to open the meetings of council to the public. * * *" However, there is nothing in the majority opinion that provides any sanction for a violation of the spirit of the decision. Because I feel strongly about this matter, I write separately.

James Madison once wrote: "A popular Government, without popular information, or the means of acquiring it, is but a Prologue to a Farce or a Tragedy * * *." 9 Writings of James Madison (Hunt Ed. 1910) 103. Far too often we have seen the results when the public's business is discussed, considered and/or decided in private. Farce or tragedy is the rule rather than the exception. A government that acts in the open—acts best. The ends sought by secret discussion of the public's business, no matter how admirable or altruistic, never justify the means.

Our American democracy is partly founded on the premise that the public has a right, yea even a duty, to oversee the decision-making procedures of those who have been chosen to govern. A public, not given the right of government oversight, is an uninformed public. With such action, the very integrity of the governing process is threatened. In *Richmond Newspapers, Inc.* v. *Virginia* (1980), 448 U.S. 555, 572, the high court said:

"People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing. When * * * ·[deliberations on policy matters are] conducted in the open, there is at least an opportunity both for understanding the system in general and its workings in a particular case * * *."

The record in this case provides clear evidence that the Cleveland City Council violated these precepts and intends to do so in the future. Such violations are in direct contravention of the charter of the city. In order to discourage further violations, I would decide in this case, and make it syllabus law, that the City Council of Cleveland is enjoined from holding or conducting a meeting that is not properly announced and that is not open to the press and public.

Absent the foregoing, there is nothing to prevent the city council from holding a "gathering" of persons who just happen to be a majority of the persons elected to the Cleveland City Council where, just incidentally, city business is discussed. It is my judgment that there should be a mandatory injunction prohibiting violations of the charter and our order from which a contempt citation could arise for provable violations.

SWEENEY, J., concurs in the foregoing concurring opinion.