THE STATE, EX REL. CRAFT ET AL., *v.* SCHISLER, CITY SOLICITOR, ET AL.

[Cite as State, ex rel. Craft, *v.* Schisler (1988), 40 Ohio St. 3d 149.]

(No. 87-1814—Submitted November 14, 1988—Decided December 28, 1988.)

150

*Steven E. Hillman* and *Mark W. Price,* for relators.

*Richard T. Schisler,* city solicitor, for respondents.

*Per Curiam.* In this case, we are again asked whether a city council must hold its meetings in public when required to do so by charter. For the reasons that follow, we hold that it must, and that relators are entitled to a peremptory writ of mandamus.

Section 4 of the Charter of the City of Portsmouth provides:

"At seven o'clock P.M. on the first Monday in January following a regular municipal election the Council shall meet at the usual place for holding Council meetings and the newly elected members shall assume the duties of office. Thereafter the Council shall meet at such times as may be prescribed by ordinance or resolution, but not less frequently than twice each month. Special meetings may be held upon vote of the Council taken in any regular or special meeting, also, shall be called by the Clerk upon the written request of the Mayor, the City Manager or three members of the Council. Any such vote or request shall state the subject to be considered at the special meeting and no other subject shall be there considered. *All meetings of the Council and of committees thereof shall be open to the public, and the rules of the Council shall provide that citizens of the City shall have a reasonable opportunity to be heard at any such meeting in regard to any matter considered thereat.*" (Emphasis added.)

Relators argue that by requiring *all* council and committee meetings to be public, this charter provision prohibits any meeting, regardless of its purpose, from being private. Relators rely principally on *State, ex rel. Plain Dealer Publishing Co.,* v. *Barnes* (1988), 38 Ohio St. 3d 165, 527 N.E. 2d 807. Their reliance is well-placed.

In *Barnes,* this court considered a Cleveland City Charter provision very similar to the one at bar. That charter also required all city council and committee meetings to be public and did so without exception. Finding, in essence, that the charter meant what it said, we concluded that when a majority of those on the Cleveland City Council or on one of its committees assembled at a set time to discuss public business, the meeting must be public. *Id.* at 167-168, 527 N.E. 2d 810-811. Further, private executive sessions, where not authorized by the charter, were not excepted from this rule. *Id.* at 168, 527 N.E. 2d at 810-811, fn. 2. Accordingly, because the newspaper in *Barnes* had been denied access to such meetings and it had no adequate alternative

remedy, a writ of mandamus compelling the city to open its meetings to the public was allowed.

Respondents contend, however, that *Barnes* is distinguishable from the matter at hand because Section 4 of the Portsmouth Charter gives the city council the power to regulate its meetings by rule or ordinance. From this, respondents argue that R.C. 121.22 applies because it is referred to in Portsmouth City Council Rule of Government 18(c). Under R.C. 121.22 (G), members of a public body may hold executive sessions to discuss, *inter alia,* matters relating to personnel, official appointment, purchasing property, litigation, and labor negotiations. According to respondents, all their executive sessions have been restricted to these topics.

Portsmouth City Council Rule of Government 18(c) provides, in part:

"The City Clerk of [*sic,* or] her designate shall advise the news media or interested citizens (upon request) of all meetings of the City Council and other municipal bodies, and notice of such meetings shall be posted on the bulletin board in the lobby of the second floor of the Municipal Building * * * in compliance with the requirements of the Sunshine Law of the State of Ohio [R.C. 121.22]."

Contrary to respondents' argument, Rule 18(c) does not render R.C. 121.22 applicable to the extent that private executive city council sessions are authorized. Rather, while the rule does refer to Ohio's Sunshine Law, it does so only in the limited sense of requiring that notice of all council meetings be posted in accordance with R.C. 121.22(F). Indeed, to read the rule as broadly as respondents urge would create a conflict between it and the mandate in Section 4 of the city's charter that all council meetings be open to the public. As relators point out, the charter, being the superior authority, would invalidate the rule under this construction. *State, ex rel. Elchlinger,* v. *Ramser* (1961), 113 Ohio App. 289, 17 O.O. 2d 275, 172 N.E. 2d 731 (administrative rules in conflict with provisions of city charter are invalid). See, also, *Reed* v. *Youngstown* (1962), 173 Ohio St. 265, 19 O.O. 2d 119, 181 N.E. 2d 700, paragraph two of the syllabus, and *State, ex rel. Bloomingdale,* v. *Fairborn* (1983), 2 Ohio St. 3d 142, 2 OBR 689, 443 N.E. 2d 181 (ordinances and resolutions in conflict with provisions of city charter are invalid).

In addition to arguing the applicability of R.C. 121.22, respondents assert that this case is distinguishable from *Barnes* because, here, only the access rights of two citizens are at stake. In contrast, the action in *Barnes* was brought by a major newspaper. This "distinction" has no merit. In a related situation involving access to court proceedings, we said that "the rights of newspapers and other media rise no higher than those of the general public." *State, ex rel. The Repository,* v. *Unger* (1986), 28 Ohio St. 3d 418, 420, 28 OBR 472, 474, 504 N.E. 2d 37, 39. It follows that relators are just as entitled to attend these city council meetings as were the members of the press in *Barnes.*

In their second proposition of law, relators alternatively assert that respondents have a constitutional duty to permit access to meetings of the Portsmouth City Council. In *Barnes,* this court did not reach a similar question because we found that the Cleveland Charter plainly established that the newspaper was entitled to relief. Inasmuch as *Barnes* is dispositive of this action as far as relators' rights under the Portsmouth Charter are con-

152

cerned, we need not address relators' constitutional claim here either.

Accordingly, respondents are ordered to open all of each council meeting they hold to the public, pursuant to the public rights established under Section 4 of the Charter of the City of Portsmouth. The writ prayed for is allowed.

*Writ allowed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.