The STATE ex rel. GANNETT SATELLITE INFORMATION NETWORK, INC., d.b.a. The Cincinnati Enquirer, Appellant,

v.

CINCINNATI CITY COUNCIL, Appellee.

[Cite as *State ex rel. Gannett Satellite Info. Network, Inc. v. Cincinnati City Council* (2000), 137 Ohio App.3d 589.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–990806.

Decided April 7, 2000.

*Graydon, Head & Ritchey* and *John C. Greiner*, appellant.

*Fay Dupuis*, City Solicitor, and *Richard Ganulin*, Assistant City Solicitor, for appellee.

_____

PAINTER, Judge.

This is a case of statutory interpretation. The facts are not in dispute, and the only issue is whether the Charter of the City of Cincinnati allows the city council to meet in "executive sessions" that are closed to the public.

This is not a case about freedom of the press or open-meeting laws in general. Many governing bodies properly hold closed executive sessions, and the Ohio legislature has determined that executive sessions are permissible in certain situations. But closed sessions are permitted only if the governing document of the public body itself so allows.

## Our Holding

The Cincinnati City Charter specifically states that meetings of council shall be open. It makes no exception for closed executive sessions. The rules of council cannot supersede the charter. The Ohio Sunshine Law only permits executive sessions as an *exception* to the general rule that all meetings shall be open. Because the city charter itself requires all city council meetings to be open, no exception is implicated. This issue has previously been determined by the Ohio Supreme Court, and we reverse the decision of the trial court holding otherwise. Unless the city charter is changed, closed executive sessions are not permitted.

## The Present Controversy

Petitioner-appellant, Gannett Satellite Information Network, Inc., d.b.a. The Cincinnati Enquirer, appeals from the trial court's denial of its petition for a writ of mandamus against respondent-appellee, Cincinnati City Council. The Enquirer argues that, under Cincinnati's city charter, the city council is not permitted to hold closed executive sessions.

The case arose when an Enquirer reporter was denied access to an executive session convened to conduct an evaluation of the city manager. Although the litigation initially focused on the one particular session, the Enquirer's requested writ of mandamus asked that executive sessions, in general, be made open to the public.

In the Enquirer's sole assignment of error, it asserts that the trial court erred in denying its requested writ. To be entitled to mandamus, the Enquirer needed to establish a clear legal right to open council meetings, a clear legal duty on the part of the city council to provide open council meetings, and the lack of an adequate remedy at law.[1] We hold that mandamus should have been granted.

## The Law is Clear

Section 5, Article II of the Charter of the City of Cincinnati states, "The proceedings of the council shall be public." The Enquirer argues that this section of the charter, which does not mention any exception for executive sessions, mandates that all council meetings be open to the public. In response, the city points to another provision of the charter that states that "meetings [of the city council] shall be held * * * in accordance with a rule adopted by the council which may be amended at any time."[2] The city then refers to Rule 2.1 of the Rules of Council, which the city claims authorizes executive sessions. Rule

---

1. See *State ex rel. Fenley v. Kyger* (1995), 72 Ohio St.3d 164, 165, 648 N.E.2d 493, 494.

2. Section 5, Article II, Charter of the City of Cincinnati.

2.1 provides, "All meetings of the council and standing committees shall be open to the public; however, the council and its committees may at any meeting hold an executive session closed to the public pursuant to the law of Ohio and as provided in these rules." The city also points to Ohio's Sunshine Law, which permits executive sessions in some circumstances.[3]

In concluding that mandamus should have been granted, we first hold that the city charter mandates open proceedings. The rules of council cannot supersede·this mandate. And the mandate supersedes the provision in Ohio's Sunshine Law that permits executive sessions.

The city charter, which has no provision regarding executive sessions, clearly specifies that the "proceedings of the council shall be public." We believe that the charter means what it says. The language is clear and unambiguous.

In cases with charters using similar language, and similarly making no reference to executive sessions, the Ohio Supreme Court has held that, since executive sessions were not authorized by the charters, the general language in the charters requiring open meetings prevailed.[4] We follow these cases and conclude that there is no implied exception for closed executive sessions in. the Cincinnati City Charter.

### A Rule Cannot Change the Charter

Regarding the city's reference to Rule 2.1 of the Rules of Council, the Ohio Supreme Court has held that the plain language of a city charter is a superior authority that prevails over conflicting rules of council or city ordinances, even rules or ordinances promulgated pursuant to a city charter's authority. It is axiomatic that rules or ordinances cannot change a provision of a charter, just as legislation by Congress cannot abrogate a provision of the Constitution.

In *State ex rel. Inskeep v. Staten,* the Ohio Supreme Court analyzed the Mason City Charter, which, like Cincinnati's city charter, provided that "[a]ll meetings of the Council shall be open to the public" and did not provide for executive sessions. The court held that the plain language of the charter providing for open meetings prevailed over an ordinance that permitted certain "special meetings" to be held in private: "The charter manifestly requires open meetings

---

3. See R.C. 121.22(G).

4. See *State ex rel. Inskeep v. Staten* (1996), 74 Ohio St.3d 676, 678, 660 N.E.2d 1207, 1209; *Fenley* at 166, 648 N.E.2d at 494; *State ex rel. Plain Dealer Publishing Co. v. Barnes* (1988), 38 Ohio St.3d 165, 167–168, 527 N.E.2d 807, 810–811.

and prohibits executive sessions. To the extent that [the ordinance] conflicts with the foregoing charter provisions, it is ineffective." [5]

Here, Rule 2.1, which allows closed executive sessions, conflicts with the plain language of the city charter, which mandates open proceedings. In light of the conflict, the city charter prevails. Closed executive sessions are not permitted under the city charter, and the city council cannot by rule change the charter or create rules that conflict with the charter.

### The Sunshine Law

█ The remaining major issue is the effect that the Ohio Sunshine Law has on this case. The Sunshine Law does provide for executive sessions. But the Sunshine Law does not alter the city charter's mandate that proceedings of council shall be public. Generally, in matters of local self-government, provisions of a municipal charter will prevail over parallel state law that expressly conflicts with the charter.[6]

In *State ex rel. Fenley v. Kyger*, the Ohio Supreme Court held that the Oxford City Charter required that all council meetings be open to the public. The court then concluded that this open-meeting mandate was not superseded by provisions in Ohio's Sunshine Law that permitted closed meetings for certain attorney-client-privilege matters: "[The Sunshine Law] is inapplicable here, since the charter requirement that council meetings ' * * * shall be open to the public' prohibits any meeting, regardless of its purpose, from being private." [7] Here, just as the Ohio Sunshine Law's provisions for closed meetings for certain attorney-client-privilege matters did not supersede the Oxford City Charter in *Fenley*, we hold that the Sunshine Law's provision for executive sessions does not supersede the Cincinnati City Charter's mandate for open meetings. In other words, the city council cannot rely on the sunshine law to hold closed executive sessions. Rather, the city council must abide by the city charter. Unless the charter is amended to provide for closed executive sessions, all proceedings of the council must be public. We hold that the trial court erred in denying the Enquirer's petition for a writ of mandamus.

---

5. 74 Ohio St.3d at 678, 660 N.E.2d at 1209; see, also, *State ex rel. Craft v. Schisler* (1988), 40 Ohio St.3d 149, 151, 532 N.E.2d 719, 721–722 (provision for open meetings in city charter prevailed over conflicting provisions in rules of council).

6. See *Fenley* at 165, 648 N.E.2d at 494; Section 1, Article II, Charter of the City of Cincinnati.

7. 72 Ohio St.3d at 166, 648 N.E.2d at 494–495; see, also, *Fox v. Lakewood* (1988), 39 Ohio St.3d 19, 22, 528 N.E.2d 1254, 1257.

## Other Arguments

█ We reject other arguments made by the city. First, the city points out that the challenged executive session has already occurred. Thus, the city argues that we should not even decide this appeal because the case is moot. But the Enquirer's petition asked that executive sessions, in general, be made open to the public. The case is not moot because the city council will certainly attempt to hold executive sessions in the future. If we were to accept the city's argument, any *fait accompli* would avoid the law. The law will not permit such evasion. Because the issue of executive sessions is likely to recur, we reject the city's argument.[8]

Second, the city argues that mandamus should not be granted because it is not an appropriate remedy. But, in similar cases requesting open meetings, such as *Inskeep* and *Fenley*, the Ohio Supreme Court has consistently granted mandamus, and we follow those cases.[9]

Third, the city argues that an Ohio Supreme Court decision, *State ex rel. Cincinnati Post v. Cincinnati*,[10] controls here. In denying mandamus in the present case, the trial court relied on the *Cincinnati Post* case. The trial court stated that *Cincinnati Post* stands for the proposition that the Cincinnati City Charter does not conflict with Ohio's Sunshine Law and, thus, that the Sunshine Law's provision for executive sessions can be used by the city council. But the trial court's reliance on the *Cincinnati Post* case was misplaced. *Cincinnati Post* does state in general terms that the provision for open meetings in Cincinnati's City Charter does not conflict with the openness provisions of Ohio's sunshine law.[11] That is correct, as far as it goes. But the case does not address the issue here: whether the executive-session provision of the Sunshine Law conflicts with Cincinnati's City Charter. We conclude that the *Cincinnati Post* case simply is not relevant to this case.

█ Fourth, the city points to the city charter's mandate that the "proceedings of the council shall be public" and argues that "proceedings" (which are not defined in the city charter) are not the same as "meetings." But, under the plain usage of the terms, there is no doubt that meetings, which include executive

---

8. See *Barnes, supra*, at 166, 527 N.E.2d at 809 (a court may hear an appeal where the issues concern "public rights which are 'capable of repetition, yet evading review'" [citations omitted]); *Fenley* at 165, 648 N.E.2d at 494.

9. *Inskeep* at 678, 660 N.E.2d at 1209; *Fenley* at 166, 648 N.E.2d at 495; see, also, *Barnes* at 169, 527 N.E.2d at 811.

10. (1996), 76 Ohio St.3d 540, 668 N.E.2d 903.

11. *Id.* at 544–545, 668 N.E.2d at 907.

sessions, are types of proceedings.[12] The city claims that "proceedings" occur only when council exercises "legislative power," i.e., when it votes. We will not twist words in such a sophistic manner. Accepting this argument would allow the council to always meet behind closed doors, decide what to pass, then come out and vote. Not only is this argument feckless, it is pernicious.

Finally, the city argues that the Enquirer is collaterally estopped from prevailing in this case based on the holding in *Gannett Satellite Information Network v. Cincinnati City Council.*[13] Collateral estoppel precludes relitigation of an issue that has been "actually and necessarily litigated and determined in a prior action which was based on a different cause of action."[14] In *Gannett Satellite Information Network,* the Hamilton County Court of Common Pleas held that the city manager was not entitled to notice of a special session of city council considering his dismissal and, consequently, that Gannett had no right to notice or to a public hearing.[15] Although the case involved the same parties, the court did not decide the issue in the present case of whether the city charter prevents the city council from holding closed executive sessions. Because the issue here was not previously litigated and decided, collateral estoppel does not apply.

## Remand

Therefore, we sustain the Enquirer's sole assignment. The trial court erred in denying the writ of mandamus. The judgment of the trial court is reversed, and this cause is remanded with instructions to issue the writ.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., and SUNDERMANN, J., concur.

---

**12.** See *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 422, 667 N.E.2d 1223, 1228.

**13.** (1993), 63 Ohio Misc.2d 138, 620 N.E.2d 267.

**14.** *State ex rel. Kirby v. S.G. Loewendick & Sons, Inc.* (1992), 64 Ohio St.3d 433, 438, 596 N.E.2d 460, 463.

**15.** 63 Ohio Misc.2d at 144, 620 N.E.2d at 271.