MOLLETTE et al., Appellees and Cross–Appellants,

v.

PORTSMOUTH CITY COUNCIL, Appellant and Cross–Appellee.

[Cite as *Mollette v. Portsmouth City Council*, 169 Ohio App.3d 557, 2006-Ohio-6289.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 05CA3051.

Decided Nov. 27, 2006.

Schroeder, Maundrell, Barbiere & Powers, and Lawrence E. Barbiere; and David W. Kuhn, Portsmouth City Solicitor, for appellant and cross-appellee.

Dagger, Johnston, Miller, Ogilvie & Hampson, and D. Joe Griffith, for appellees and cross-appellants.

---

HARSHA, Presiding Judge.

{¶ 1} Teresa and Robert Mollette, appellees and cross-appellants, brought suit against Portsmouth City Council, appellant and cross-appellee, alleging that Ordinance 63–02 was invalid because it resulted from private deliberations, in violation of the Portsmouth City Charter and R.C. 121.22. After the trial court granted summary judgment to the Mollettes, city council appealed and the Mollettes filed a cross-appeal. Initially, city council argues that the trial court should have dismissed the case because a city council is not "sui juris," i.e., possessing full capacity and rights to sue or be sued. We find merit in this argument. Because a city council is not sui juris, it cannot be sued in its own right, absent statutory authority. The Mollettes have failed to cite any statutory authority subjecting city councils to suit. Additionally, because a city council's non sui juris status renders any judgment against it void, a city council cannot waive the issue. Thus, once the issue of city council's non sui juris status arose, the trial court had two options: (1) strike the complaint from the docket or (2) allow the Mollettes to amend their complaint to name a different defendant. Because the court denied the Mollettes' motion for leave to amend their complaint, its only other option was to strike the complaint due to city council's non sui juris status.

{¶ 2} In their cross-appeal, however, the Mollettes argue that the trial court abused its discretion when it denied their motion for leave to amend their

complaint. They argue that the court should have allowed them to amend their complaint to name the city of Portsmouth as a defendant. Because there is no evidence of bad faith or undue delay on the part of the Mollettes in filing their motion for leave to amend, and the proposed amendment would not prejudice city council, we conclude that the trial court abused its discretion when it overruled the Mollettes' motion. Accordingly, we reverse the trial court's judgment and remand this matter for further proceedings.

## I. FACTS

{¶ 3} Because the issues here do not involve the merits of the case, we provide only an abbreviated statement of the facts.

{¶ 4} For years, city council had been looking for a new building to house the government offices. In early 2002, the mayor informed city council that an opportunity existed to purchase a building owned by the Richard D. Marting Foundation. Soon after, the council members met with a representative of the Marting Foundation to tour the building. Council members Howard Baughman, James Kalb, and Maddeline Caudill toured the building one day. Council members Barbara Halcomb, Ann Sydnor, and Ray Pyles toured the building another day.

{¶ 5} On April 22, 2002, city council held a regular council meeting. The agenda for the meeting gave no indication that council would be considering the purchase of the Marting's building. However, at the meeting, council went into executive session "to discuss the purchase of property for the City." When council returned from executive session, Councilman Pyles moved to add to the agenda an ordinance authorizing the mayor to negotiate a real estate purchase agreement for the Marting's building. The other council members agreed and provided a copy of the proposed ordinance to the members of the public. Subsequently, the city clerk gave a first reading of the proposed ordinance. After voting to suspend the rule requiring three readings of the ordinance,[1] the council members adopted the ordinance.

{¶ 6} Three weeks later, on May 13, 2002, city council held another regular meeting. Like all of council's regular meetings, this meeting consisted of a legislative session and a conference session. According to the minutes of the legislative session, council did not discuss the purchase of the Marting's building. At the conclusion of the legislative session, council held a conference session to

---

**1.** Section 10 of the Portsmouth City Charter provides: "No ordinance shall be passed until it has been read on three separate days, unless the requirement of reading it on three separate days be dispensed with by a vote of not less than all of the members elected to Council less two, of the Council."

discuss pending legislation. The agenda for the conference session included a letter from the mayor regarding the real estate purchase agreement for the Marting's building. Although conference sessions are open to the public, council does not prepare minutes of its conference sessions.

{¶ 7} On May 29, 2002, city council held its next regular meeting. The agenda for the legislative session included an ordinance authorizing the mayor to enter into a real estate purchase agreement for the Marting's building "in an amount not to exceed $2,000,000 to be paid for from the proceeds of bond anticipation notes." During the meeting, Councilman Baughman moved to add to the agenda an ordinance providing for "the issuance of $2,000,000 City Hall Building Acquisition Bond Anticipation Notes." The other council members agreed, and the ordinance was added to the agenda. Subsequently, the city clerk gave a first reading of the ordinance authorizing the mayor to enter into a real estate purchase agreement for the Marting's building. The council members voted to suspend the rule requiring three readings of the ordinance and adopted Ordinance 63–02. The city clerk then gave a first reading of the ordinance authorizing the city to issue the $2,000,000 bond anticipation notes. After voting to suspend the three-readings requirement, the council members also adopted this ordinance.

{¶ 8} On May 28, 2004, Teresa and Robert Mollette filed suit against Portsmouth City Council alleging that Ordinance 63–02 resulted from private deliberations in violation of the Portsmouth City Charter and R.C. 121.22. Council responded by filing an answer and a motion for judgment on the pleadings. In the motion, council argued that the one-year statute of limitations in R.C. 733.60 barred the Mollettes' claim. The Mollettes filed a response, arguing that the two-year statute of limitations in R.C. 121.22 governed their claim. In August 2004, the trial court scheduled the matter for an evidentiary hearing. The day before the hearing, council filed a "hearing brief" requesting summary judgment on the pleadings. Council opined that the court, by requesting evidence, had converted its motion into one for summary judgment. On September 30, 2004, the court held a hearing at which the Portsmouth City Clerk and Mrs. Mollette testified. At the conclusion of the hearing, the court converted city council's motion for judgment on the pleadings into a motion for summary judgment. The Mollettes then filed a cross-motion for summary judgment. They supported their motion with the minutes from the council meetings in April and May, the testimony from the hearing, and the depositions of Baughman, Caudill, Kalb, Sydnor, and Halcomb. One week after the Mollettes filed their cross-motion for summary judgment, council filed a "formal" summary judgment motion. Council supported its motion with the same evidence relied upon by the Mollettes.

{¶ 9} In November 2004, the trial court denied city council's motion for summary judgment and granted summary judgment to the Mollettes. The court concluded that the cause of action arose under R.C. 121.22 and, therefore, the two-year statute of limitations in R.C. 121.22(I) applied. Additionally, the court concluded that Ordinance 63–02 resulted from private deliberations in violation of R.C. 121.22 and the Portsmouth City Charter. As a result, the court declared the ordinance and resulting real estate purchase agreement invalid.

{¶ 10} City council timely appealed and the Mollettes cross-appealed. After receiving permission from the trial court to intervene as a defendant, the Marting Foundation also appealed. The Foundation then filed a motion asking us to reverse the trial court's judgment and dismiss the complaint. The Foundation argued that city council is not sui juris and thus, it cannot be sued. Before we could rule on this motion, however, the Foundation dismissed its appeal. One week after the Foundation filed its motion, city council filed a similar motion. However, in July 2005, we dismissed council's appeal and the Mollettes' cross-appeal for lack of a final, appealable order.

{¶ 11} When the case returned to the trial court, the Mollettes sought leave to amend their complaint. In their motion, the Mollettes maintained that city council is sui juris. However, they argued in the alternative that they should be allowed to amend their complaint to name the city and the city council members as defendants. City council opposed the motion and argued that the trial court should dismiss the case. In September 2005, the court denied the Mollettes' motion, finding that amendment of the complaint was unnecessary. That same month, the court issued an injunction prohibiting city council from (1) going into executive session during its meetings and (2) holding private back-to-back meetings that, taken together, are attended by a majority of council members.

{¶ 12} In the meantime, the Mollettes filed a motion with the trial court requesting attorney's fees. In October 2005, the court held a hearing on the motion for attorney's fees. Two months later, the court issued a decision in which it concluded that the Mollettes were entitled to an award of attorney fees. Furthermore, the court declined to reduce the award, finding that the council members knew that their actions violated R.C. 121.22 and the Portsmouth City Charter. In the end, the court awarded the Mollettes a $500 civil forfeiture and $18,317.70 in attorney fees.

{¶ 13} The trial court's decision on attorney fees disposed of the remaining issues in the case. Council now appeals the court's judgment, raising six assignments of error. The Mollettes have filed a cross-appeal, raising two assignments of error.

## II. ASSIGNED ERRORS

### A. City Council's Assignments of Error

1. The trial court erred in finding as a matter of law that the charter of the City of Portsmouth prohibited city council from conducting executive sessions at its meetings.

2. The trial court erred in finding as a matter of law that Portsmouth City Council violated the Sunshine Law in adopting Ordinance 63–02.

3. The trial court erred in awarding the Mollettes attorneys' fees and a civil forfeiture because no violation of the Sunshine Act occurred and because the Mollettes never sought, nor were they granted injunctive relief under a Sunshine Law claim.

4. The trial court erred by refusing to reduce the attorneys' fee award where the evidence established that the Portsmouth City Council could reasonably have believed it was not violating the Sunshine Law and that its actions served public policy.

5. The Mollettes' claim to enjoin the purchase [of] the real property pursuant to the real estate contract entered into in accordance with Ordinance 63–02 was barred by the one-year statute of limitations set forth in R.C. 733.60.

6. The trial court erred by not dismissing the Mollettes' complaint because the complaint was filed against an entity that is not sui juris.

### B. Mollettes' Assignments of Error

1. The trial court committed plain error in reducing the amount of attorney fees granted to Plaintiff/Appellee/Cross–Appellants.

2. The trial court abused its discretion in denying Plaintiff/Appellee/Cross–Appellants' Motion For Leave To Amend Complaint to join as a necessary party the City of Portsmouth, Ohio, a municipal corporation.

## III. ANALYSIS

### A. Sui Juris Status

{¶ 14} The city council's sixth assignment of error raises a preliminary question that we must decide before we can address the other assignments of error: council argues that the trial court should have dismissed the action because a city council is not sui juris, i.e., it does not have full capacity and rights, including the capacity to be sued.

{¶ 15} "A city council is not sui juris and therefore cannot sue or be sued in its own right, absent statutory authority." *City of Cuyahoga Falls v. Robart* (1991), 58 Ohio St.3d 1, 6, 567 N.E.2d 987. Instead, "[a]n action involving the

council should be brought against the city, or against the existing councilmen." *State ex rel. Cleveland Municipal Court v. Cleveland City Council* (1973), 34 Ohio St.2d 120, 122, 63 O.O.2d 199, 296 N.E.2d 544.

{¶ 16} The Mollettes' complaint names Portsmouth City Council as the sole defendant. However, unless a statute specifically authorizes suit against city councils, Portsmouth City Council cannot be sued. See *Robart.* In their brief, the Mollettes argue that R.C. 121.22 authorizes suit against city councils for violations of the open-meetings law. They note that the definition of "public body" in R.C. 121.22(B)(1)(a) includes "any legislative authority or board * * * council * * * or similar decision-making body of any * * * municipal corporation." Additionally, they note that in discussing the remedies for a violation of the open-meetings law, R.C. 121.22(I)(2)(a) states that "the court shall order the public body that it enjoins to pay a civil forfeiture of five hundred dollars to the party that sought the injunction." They argue that in order for R.C. 121.22(I)(2)(a) to have any legal effect, the "public body" that is the subject of the injunction and civil forfeiture order must be a party to the action.

{¶ 17} There is no language in R.C. 121.22 specifically authorizing suits against city councils. Moreover, the inclusion of city councils within the definition of a "public body" is insufficient to subject city councils to suit. The Mollettes argue that the city council must be a party to the action if it is to be bound by the court's injunction and civil forfeiture order. However, the same result can be achieved by bringing suit against the individual council members in their official capacity. An injunction and civil forfeiture order against the council members in their official capacity is, for all practical purposes, an injunction and civil forfeiture order against city council.

{¶ 18} Furthermore, a review of other statutes reveals that the General Assembly is usually explicit when conferring the ability to sue and be sued upon an entity. See R.C. 145.09 (the public employees retirement board); R.C. 305.12 (the board of county commissioners); R.C. 3307.03 (state teachers retirement board); R.C. 3313.17 (boards of education); R.C. 4901.02 (public utilities commission of Ohio); R.C. 4582.02 (port authorities). Had the General Assembly intended to subject city councils to suit, it could have expressed that intent clearly. However, our review has failed to turn up any statutes authorizing suit against city councils. Additionally, the Mollettes have failed to cite any statutory authority making city councils amenable to suit.

{¶ 19} The Mollettes argue that some courts have implicitly recognized that city councils are amenable to suit. They direct our attention to several cases involving city councils as named defendants. See, e.g., *Morris v. Macedonia City Council* (1994), 71 Ohio St.3d 52, 641 N.E.2d 1075; *State ex rel. Gannett Satellite Information Network, Inc. v. Cincinnati City Council* (2000), 137 Ohio App.3d

589, 739 N.E.2d 387; *Washington Twp. Bd. of Trustees v. Mansfield City Council,* Richland App. Nos. 03CA85 and 03CA97, 2004–Ohio–4299, 2004 WL 1813916; *Kandell v. City Council of Kent, Ohio* (Aug. 2, 1991), Portage App. No. 90–P–2255, 1991 WL 147448; *Kauffman v. Tiffin City Council* (Aug. 14, 1985), Seneca App. No. 13–84–9, 1985 WL 7365. However, a review of these cases indicates that the parties never raised the issue of a city council's non sui juris status. As a result, the courts apparently did not consider the issue. Additionally, the Supreme Court of Ohio has *explicitly* stated: "A city council is not sui juris and therefore cannot sue or be sued in its own right, absent statutory authority." *Robart,* 58 Ohio St.3d at 6, 567 N.E.2d 987, citing *Cleveland City Council,* 34 Ohio St.2d at 122, 63 O.O.2d 199, 296 N.E.2d 544. Based on *Robart,* we conclude that the Mollettes' reliance on the cases it cites is misplaced.

{¶ 20} Finally, the Mollettes argue that city council has waived any argument regarding its non sui juris status. They argue that council did not raise the issue of its non sui juris status by specific negative averment as required by Civ.R. 9(A). Additionally, they note that council never filed a motion asking the trial court to dismiss the complaint because of city council's non sui juris status. In response, city council argues that its answer satisfies the pleading requirements of Civ.R. 9(A). Council asserts that the complaint includes an averment that city council is capable of being sued. Council argues that the explicit denial of this averment in its answer "clearly satisfies Civ.R. 9(A)."

{¶ 21} Civ.R. 9 governs the pleading of special matters. Specifically, Civ.R. 9(A) states: "When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued * * * he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge."

{¶ 22} Contrary to city council's argument, the Mollettes' complaint contains no averment concerning council's ability to be sued. In fact, Civ.R. 9(A) provides that "[i]t is not necessary to aver the capacity of a party to sue or be sued * * * or the legal existence of an organized association of persons that is made a party." Council directs our attention to paragraph two of the complaint in which the Mollettes allege that "Defendant, Portsmouth City Council, is the 'public body' representing the City of Portsmouth as a political subdivision in legislative affairs as defined in R.C. 121.22(B)(1)." However, this statement simply alleges that city council is a public body for purposes of the open-meetings law contained in R.C. 121.22. It does not allege that city council is sui juris and therefore capable of being sued. For this reason, council's general denial of the statement is insufficient to raise the issue of its non sui juris status.

{¶ 23} Although council failed to comply with the pleading requirements of Civ.R. 9(A), we conclude that this failure does not constitute waiver of the non sui juris issue. The Supreme Court of Ohio has noted that "both plaintiff and defendant in a lawsuit must be legal entities with the capacity to be sued." *Patterson v. V & M Auto Body* (1992), 63 Ohio St.3d 573, 574, 589 N.E.2d 1306. In *Patterson*, the court held: "If a defendant in a lawsuit is not an actual or legal entity, then any judgment rendered against that entity is void. No action has been commenced pursuant to Civ.R. 3(A), which provides that an action is begun by filing a complaint 'if service is obtained within one year from such filing upon a named defendant, *or upon an incorrectly named defendant whose name is later corrected.*'" (Emphasis sic and citation omitted.) *Patterson* at 576, 589 N.E.2d 1306. In the present case, the named defendant, Portsmouth City Council, is not a legal entity. See *Robart*, 58 Ohio St.3d at 6, 567 N.E.2d 987. It is not sui juris and therefore cannot be sued. See Id. As a result of this, any judgment rendered against it is void. See *Patterson*, 63 Ohio St.3d at 576, 589 N.E.2d 1306. Because city council's non sui juris status renders the resulting judgment void, it is not an issue capable of being waived. Cf. *Leonard v. Amti Heating Prod., Inc.* (Nov. 1, 1991), Trumbull App. No. 90–T–4480, 1991 WL 230065 (finding that the ability to waive the defense of res judicata "indicates that its presence would not render a judgment void").

{¶ 24} Recently, the Supreme Court of Ohio decided *State ex rel. Downs v. Panioto*, 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911, and found that failure to challenge a party's capacity to sue in a responsive pleading constitutes waiver of that issue. Id. at ¶ 30, citing Civ.R. 9(A). However, *Panioto* is distinguishable from the present case. *Panioto* involved a challenge to a party's capacity to bring and maintain an action. There, the husband argued that his wife, who had previously been declared incompetent, lacked the capacity to sue him for divorce. After finding that the husband had waived this issue, the court further noted that "there are circumstances in which an incompetent person can maintain an action for divorce." *Panioto* at ¶ 31. The same is not true in this case. Unlike *Panioto*, this case does not involve the issue of an incompetent party's capacity to sue. Rather, it involves the issue of a defendant's legal existence. In the present case, there is no set of circumstances under which city council is capable of being sued. In fact, any judgment against city council would be void. See *Patterson*, 63 Ohio St.3d at 576, 589 N.E.2d 1306. Accordingly, we conclude that the *Panioto* court's holding concerning waiver under Civ.R. 9(A) is inapplicable to the present case. Instead, we hold that when a named defendant is not a legal entity, failure to raise the issue of that defendant's legal existence in a responsive pleading does not constitute a waiver of the issue. But, see, *Fields v. Dailey* (1990), 68 Ohio App.3d 33, 45, 587 N.E.2d 400 (holding that the police

department's failure to aver its lack of legal capacity to be sued supported the court's decision to deny the department's motion for a directed verdict).

{¶ 25} The Mollettes' motion for leave to amend their complaint brought the issue of city council's non sui juris status to the trial court's attention. At that point, the trial court had two options: (1) strike the complaint due to city council's non sui juris status [2] or (2) grant the Mollettes leave to amend their complaint to name the city and the existing city council members as defendants. The record shows that the court denied the Mollettes' motion to amend their complaint. Thus, the court should have ordered the complaint struck from the docket. Because the trial court erred in failing to strike the Mollettes' complaint, we sustain council's sixth assignment of error. However, this does not end our review. We must now consider the Mollettes' cross-appeal.

## IV. MOLLETTES' CROSS–APPEAL

{¶ 26} In their second assignment of error on cross-appeal, the Mollettes argue that the trial court abused its discretion when it denied their motion for leave to amend their complaint. They contend that the court should have permitted them to amend their complaint to name the city of Portsmouth as a party.[3]

{¶ 27} Once an answer to a complaint has been served, a party may amend its pleading only by leave of court or by written consent of the adverse party. Civ.R. 15(A). The rule favors a liberal policy when the trial court is faced with a motion to amend a pleading beyond the time limit that automatically allows such amendments. *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illuminating Co.* (1991), 60 Ohio St.3d 120, 121–122, 573 N.E.2d 622. Civ.R. 15(A) provides that leave to amend "shall be freely given when justice so requires."

{¶ 28} The decision to grant or deny a motion for leave to amend a pleading is within the sound discretion of the trial court. See *Turner v. Cent. Local School Dist.* (1999), 85 Ohio St.3d 95, 99, 706 N.E.2d 1261. See, also, *Mead Corp. v. Lane* (1988), 54 Ohio App.3d 59, 67, 560 N.E.2d 1319; *Natl. Bank of Fulton Cty. v. Haupricht Bros., Inc.* (1988), 55 Ohio App.3d 249, 251, 564 N.E.2d

---

2. Council argues that the court should have dismissed the action. However, because council is not a legal entity, the lawsuit was never properly commenced. See *Patterson*, 63 Ohio St.3d at 576, 589 N.E.2d 1306. Thus, striking the complaint is the proper remedy. See, generally, *Kossuth v. Bear* (1954), 161 Ohio St. 378, 383–84, 53 O.O. 280, 119 N.E.2d 285.

3. Although the Mollettes' argument focuses on the city, we question whether the city is a proper party in an action such as this. See *State ex rel. Keener v. Amberley* (1997), 80 Ohio St.3d 292, 293, 685 N.E.2d 1247. Nevertheless, we recognize that this is not a proper subject for this appeal.

101. Thus, we will not reverse a court's decision denying a motion for leave to amend, absent an abuse of discretion. See *McSweeney v. Jackson* (1996), 117 Ohio App.3d 623, 629, 691 N.E.2d 303.

{¶ 29} Although the disposition of a motion for leave to amend is discretionary, "[i]t is an abuse of discretion for a court to deny a motion, timely filed, seeking leave to file an amended complaint, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed." *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 63 O.O.2d 262, 297 N.E.2d 113, paragraph six of the syllabus. In *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 6, 12 OBR 1, 465 N.E.2d 377, the Supreme Court of Ohio stated: "[A] motion for leave to amend should be granted absent a finding of bad faith, undue delay, or undue prejudice to the opposing party."

{¶ 30} The record in this case does not reveal any bad faith or undue delay on the part of the Mollettes in filing their motion for leave to amend their complaint. The Mollettes filed their motion as soon as the issue of the city council's non sui juris status came to their attention. And while the case was in the summary-judgment stage at the time, city council had not raised the issue of its non sui juris status until then. In fact, the record indicates that the issue was first raised in a prior appeal. When we dismissed that appeal for lack of a final, appealable order, the Mollettes immediately filed a motion in the trial court for leave to amend. If city council had raised the issue of its non sui juris status earlier in the proceedings, the Mollettes could have filed their motion to amend at that time. As it is, the Mollettes filed their motion as soon as they learned of the issue. Additionally, the record indicates that city council would not be prejudiced by the Mollettes' proposed amendment. The Mollettes sought to amend their complaint to substitute the city and the individual city council members as defendants. Had the trial court allowed the proposed amendment, city council would have ceased to be a party to the action.

{¶ 31} The Supreme Court of Ohio has recognized that "[t]he spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies." *Peterson*, 34 Ohio St.2d at 175, 63 O.O.2d 262, 297 N.E.2d 113. Civ.R. 1(B) provides that the Civil Rules "shall be applied * * * to effect just results." Pleadings are simply an end to that objective. *Peterson.* The mandate of Civ.R. 15(A) is that leave "shall be freely given when justice so requires." In this case, we see no good reason why leave to amend should have been denied.

{¶ 32} City council argues that denying the motion to amend was proper, although for reasons other than those expressed by the trial court. Initially, city council argues that the action was not properly commenced under Civ.R. 3(A).

Council argues that even if it was an "incorrectly named defendant" for purposes of Civ.R. 3(A), the Mollettes had to correct the error and complete service upon the proper defendants within one year of filing the complaint. In addition, city council argues that the Civ.R. 15(C) relation-back requirements for avoiding a statute-of-limitations bar are not satisfied in this case.

{¶ 33} However, city council cannot assert defenses on behalf of others. The new defendants would need to raise their own arguments regarding service of process and relation back of amendments. And while the temptation exists to attribute city council's arguments to the new defendants, it is not our place to speculate about the arguments that those defendants will raise. The new defendants should be given the opportunity to assert arguments of their own.

{¶ 34} In the present case, there is no evidence of bad faith or undue delay on the part of the Mollettes in filing their motion. Furthermore, the Mollettes' proposed amendment would not prejudice city council. Accordingly, we conclude that the trial court abused its discretion when it denied the Mollettes' motion for leave to amend their complaint. See *Hoover,* 12 Ohio St.3d at 6, 12 OBR 1, 465 N.E.2d 377.

## V.  THE REMAINING ASSIGNED ERRORS

{¶ 35} City council's remaining assignments of error relate to the trial court's summary-judgment decision as well as its award of attorney's fees. The Mollettes also raise a cross-assignment of error concerning the court's award of attorney fees. However, our resolution of city council's sixth assignment of error and the Mollettes' second assignment of error on cross-appeal renders the other assigned errors moot. See App.R. 12(A)(1)(c). Thus, we need not address these arguments at this time.

## VI.  RELIEF

{¶ 36} We sustain council's sixth assignment of error and the Mollettes' second assignment of error on cross-appeal, reverse the judgment, and remand this matter to the trial court with instructions to allow the Mollettes to amend their complaint.

Judgment reversed
and cause remanded.

ABELE and KLINE, JJ., concur.